Barnaby Zall (*admitted pro hac vice*)
*Counsel for Amicus American Unity Legal Defense Fund*
WEINBERG & JACOBS, LLP
11300 Rockville Pike, #1200
Rockville, MD 20852
301-231-6943
301-984-1200 (f)
bzall@aol.com

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Friendly House, *et al.*<br>*Plaintiffs*<br><br>v.<br><br>Michael B. Whiting, Apache County Attorney in his official capacity, *et al.*<br>*Defendants* | CV-10-1061-PHX-SRB<br><br>MEMORANDUM OF POINTS AND AUTHORITIES OF *AMICUS CURIAE* AMERICAN UNITY LEGAL DEFENSE FUND IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS |

*Amicus* American Unity Legal Defense Fund ("AULDF") agrees with and adopts the arguments made by Defendant-Intervenor Gov. Janice Brewer in her Motion to Dismiss and Opposition to Plaintiffs' Motion for Preliminary Injunction. AUDLF writes to clarify the constitutional standard for review of SB 1070, which despite hundreds of pages of briefing, neither Plaintiffs nor *amici* have accurately or completely described.

**Summary:** In brief, the Supreme Court does not presume that state laws targeting ILLEGAL immigration are preempted. States may target illegal immigration, even through measures that go beyond federal law, as long as these measures are consistent with the objectives Congress established, and Congress has not expressly or "unmistakably" preempted those actions. Despite hundreds of pages of briefing, no one has shown express ouster, or "unmistakable" Congressional intention to preempt. SB 1070 is well within these settled boundaries. If the Plaintiffs wish to overturn the law, they must turn to Congress, not to the courts.

**Standards for Review:** There are two standards for reviewing State laws which affect immigrants: one for lawful residents;[1] a lower one for illegal immigrants.

> We reject the claim that "illegal aliens" are a "suspect class." No case in which we have attempted to define a suspect class, see, *e. g*., n. 14, *supra*, has addressed the status of persons unlawfully in our country. Unlike most of the classifications that we have recognized as suspect, entry into this class, by virtue of entry into this country, is the product of voluntary action. Indeed, entry into the class is itself a crime. In addition, it could hardly be suggested that undocumented status is a "constitutional irrelevancy." With respect to the actions of the Federal Government, alienage classifications may be intimately

---

[1] "[S]tate regulation not congressionally sanctioned that discriminates against aliens lawfully admitted to the country is impermissible if it imposes additional burdens not contemplated by Congress." *Toll v. Moreno*, 458 U.S. 1, 12-13 (1982), *quoting*, *De Canas v. Bica*, 424 U.S. 351, 358 n. 6 (1976); *Takahashi v. Fish & Game Comm'n*, 334 U.S. 410 (1948); *Graham v. Richardson*, 403 U.S. 365 (1971).

> related to the conduct of foreign policy, to the federal prerogative to control access to the United States, and to the plenary federal power to determine who has sufficiently manifested his allegiance to become a citizen of the Nation. No State may independently exercise a like power. But if the Federal Government has by uniform rule prescribed what it believes to be appropriate standards for the treatment of an alien subclass, the States may, **of course**, follow the federal direction.

*Plyler v. Doe*, 457 U.S. 202, 219 n. 19 (1982) (emphasis added).

Even though the California statute upheld in *De Canas* added penalties and local enforcement beyond those permitted by federal law (*see,* P. 3-5, *infra*), the Supreme Court rejected challenges based on each of the arguments asserted by Plaintiffs here, including both Supremacy Clause and preemption grounds, and specifically conflict, 424 U.S. at 357-58, full occupation of the field, 424 U.S. at 357, n. 5, and 359-60, n. 8, Congress' desire for national uniformity, 424 U.S. at 359, and the State regulation being an "obstacle" to federal immigration law enforcement. 424 U.S. at 363-65.

**Preemption of State Illegal Immigration Laws Must Be "Clear and Manifest:"** States may impose any non-conflicting burden on illegal immigrants that Congress did not "unmistakably" intend to oust. *De Canas*, 424 U.S. at 356. The Supreme Court does "not presume" that State laws which impose additional burdens on illegal immigrants are preempted:

> But we will not presume that Congress, in enacting the INA, intended to oust state authority to regulate the employment relationship covered by § 2805(a) in a manner consistent with pertinent federal laws. Only a demonstration that complete ouster of state power including state power to promulgate laws not in conflict with federal laws was "the **clear and manifest purpose of Congress**" would justify that conclusion. *Florida Lime & Avocado Growers v. Paul*, [373 U.S. 132] at 146 [1963].

*De Canas*, 424 U.S. at 357 (emphasis added).

It is not enough to have "strong evidence" of "congressional intent to preempt;" to preempt a State law against illegal immigrants, Congress must have made its purpose "clear and manifest":

> Justice Rehnquist's dissent in the present case suggests that the preemption claim was rejected in *De Canas* because "the Court found no strong evidence that Congress intended to preempt" the State's action. . . . Justice Rehnquist has misread *De Canas*. We rejected preemption claim not because of an absence of congressional intent to preempt, but because Congress *intended* that the States be allowed "to the extent consistent with federal law, [to] regulate the employment of illegal aliens."

*Toll v. Moreno*, 458 U.S. 1, 13 n. 18 (1982) (emphasis in original).

**Additional State Law Requirements:** In addition, State laws affecting illegal immigrants must "mirror federal objectives and further[] a legitimate state goal." *Plyler*, 457 U.S. at 225. This is essentially a rational basis test.[2] "Legitimate state goals" include protecting jobs, wages and working conditions, a State's "fiscal interests," and the effectiveness of labor unions.[3]

---

[2] *Plyler*, 457 U.S. at 219 n. 19 ("illegal aliens" not a "suspect class"). *See also*, "It is thus difficult to conceive of a rational justification for penalizing these children for their presence within the United States." *Plyler*, 457 U.S. at 225.

[3] *De Canas*, 424 U.S. at 356-57:

> Employment of illegal aliens in times of high unemployment deprives citizens and legally admitted aliens of jobs; acceptance by illegal aliens of jobs on substandard terms as to wages and working conditions can seriously depress wage scales and working conditions of citizens and legally admitted aliens; and employment of illegal aliens under such conditions can diminish the effectiveness of labor unions. These local problems are particularly acute in California in light of the significant influx into that State of illegal aliens from neighboring Mexico. In attempting to protect California's fiscal interests and lawfully resident labor force from the deleterious effects on its economy resulting from the employment of illegal aliens, § 2805(a) focuses directly upon these essentially local problems and is tailored to combat effectively the perceived evils.

**Congress knows how to make its objectives clear:** One of the very few areas where Congress has made an express declaration of intention to preempt State and local illegal immigration laws is in employment of illegal immigrants. Prior to 1986, the Immigration and Nationality Act ("INA") did not prohibit the employment of illegal immigrants, a factor which the lower courts in *De Canas* mistakenly viewed as precluding the State from legislating in the area. 424 U.S. at 354. The relevant federal crime, 8 U.S.C. § 1324, prohibited smuggling, harboring or transporting illegal immigrants, *U.S. v. Evans*, 333 U.S. 483 (1948)(Congress intended to punish both bringing in and aiding the continued presence of illegal immigrants), but the so-called "Texas Proviso" expressly excluded "the usual and normal practices incident to employment" from harboring. *De Canas*, 424 U.S. at 360; *U.S. v. Acosta de Evans*, 531 F.2d 428, 430 (9th Cir. 1976)(Texas Proviso not unconstitutional discrimination between those who harbor and those who employ illegal immigrants).

In the 1986 Immigration Reform and Control Act ("IRCA"), Congress deleted the Texas Proviso and prohibited the employment of illegal immigrants.[4] 8 U.S.C. §

---

[4] Plaintiffs make much of this change, arguing that Congress acted only against employers and not employees. Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction ("P. Mem."), 19-20. Yet, that is because illegal presence was, and is, "itself a crime", *Plyler*, 457 U.S. at 219, while the "Texas Proviso" immunized the employer. Plaintiffs' claim also shows their misunderstanding of the illegal immigration standard of review. The express preemption clause (*see, infra*) applies only to employers; it thus does not preempt state laws applicable to employees because there is no express or "unmistakable" evidence of Congressional intention not to impose penalties on the alien employees themselves. "Persuasive arguments support the view that a State may withhold its beneficience from those whose very presence within the United States is the product of their own unlawful conduct." *Plyler*, 457 U.S. at 219; *see, also, We Are America/Somos America, Coalition of Arizona v. Maricopa County Board of Supervisors*, 594 F.Supp.2d 1104, 1110-1114 (D.Ariz. 2009)(Arizona law criminalizing conspiracy to smuggle individual aliens upheld because no indication that Congress intended preemption, and Arizona law duplicated, but was harmonious with, Immigration and Nationality Act).

1324a. The new law "'forcefully' made combating the employment of illegal aliens central to '[t]he policy of immigration law'". *Hoffman Plastic Compounds, Inc. v. N.L.R.B.*, 535 U.S. 137, 147-48 (2002) (internal citation omitted).

Congress included an express preemption clause, with a specific exception for State "licensing and similar laws."[5] 8 U.S.C. § 1324a(h)(2). The language of the exception was negotiated between various groups and changed during consideration of the bill; for example, the 1983 Senate version of the language did not contain the exception. S. Rep. 98-62, at 116. The House Committee Report on the 1986 version which became law explained the preemption exception:

> The penalties contained in this legislation are intended to specifically preempt any state or local laws providing civil fines and/or criminal sanctions on the hiring, recruitment or referral of undocumented aliens.
>
> They are not intended to preempt or prevent lawful state or local processes concerning the suspension, revocation or refusal to reissue a license to any person who has been found to have violated the sanctions provisions in this legislation. Further, the Committee does not intend to preempt licensing or "fitness to do business laws," such as state farm labor contractor laws or forestry laws, which specifically require such licensee or contractor to refrain from hiring, recruiting or referring undocumented aliens.

H.R. Rep. 99-682(1), at 58.

This language is thus the "unmistakable" language required to oust State laws. The ouster is expressly limited, however, to State laws "providing civil fines and/or criminal sanctions on the hiring, recruitment or referral of undocumented aliens", and not even to all of those.

Pursuant to the specific preemption exception, Arizona has enacted just such a licensing law, and it has been upheld against several preemption challenges. *Chicanos*

---

[5] "**(2) Preemption.** The provisions of this section preempt any State or local law imposing civil or criminal sanctions (other than through licensing and similar laws) upon those who employ, or recruit or refer for a fee for employment, unauthorized aliens." 8 U.S.C. § 1324a(h)(2).

*Por La Causa v. Napolitano*, 558 F.3d 856 (9th Cir. 2009), *cert. granted, sub nom., Chamber of Commerce v. Candelaria*, No. 09-115. As Judge Wake said in one of those cases before this Court: "[I]t is hard to see how state employer sanctions provisions that are carefully drafted to track the federal employer sanctions law can be inconsistent with it – unless we take ineffective enforcement to be the 'real' federal policy from which state law must not deviate." *Ariz. Contractors Ass'n v. Candelaria*, 534 F.Supp.2d 1036, 1055 (D.Ariz. 2008).

Plaintiffs would like to ignore this specific preemption exception, P. Mem., 20 ("savings clause is not at issue here."), but that is because they do not recognize the relevance of interior immigration law enforcement to the evaluation of State immigration-related laws.

**Plaintiffs' Arguments Ignore the Illegal Immigration Standard:** Plaintiffs and their *amici* have missed the distinction between the two immigration standards of review.[6] For example, Plaintiffs claim that *De Canas* is a "flat prohibition on state regulation of immigration[,] required because immigration regulation is 'unquestionably exclusively a federal power.'" P. Mem., 10. Yet *De Canas* rejected that analysis, *Toll*, 458 U.S. at 11 n. 16, and permitted State regulation of illegal immigration because Congress "intended" State regulation. *Toll*, 458 U.S. at 13 n. 18.

---

[6] Petitioners apparently contend that the possibility that an illegal immigrant once had or might later obtain work or residence authorization means that all aliens can use the legal resident standard. P. Mem., Pp. 7, 12 n. 12 (SB 1070 "does not distinguish" aliens who fail to maintain status from those "who currently lack status."). But no case supports that proposition. An alien either has status or not, and lacking status is not a "constitutional irrelevancy." *Plyler*, 457 U.S. at 219, n. 19. The fact that an alien might someday or under some circumstances obtain status or work authorization does not change the statutory objectives, or the consequences of failure to abide by the law.

Plaintiffs also contend that Congress implicitly intended that federal law enforcement displace state illegal immigration laws because federal law enforcement is delicately balanced and prioritized. P. Mem. 15, 18 (since federal officials "would be highly unlikely" to charge illegal immigrants, SB 1070 "interferes with the national interest in uniformity in the enforcement of federal immigration law."). This is a euphemism: federal "interior" immigration law enforcement has collapsed, declining almost 100% between 1996 and 2005, and never recovering.[7]

Yet in light of *De Canas*, the collapse of federal immigration law enforcement shows the opposite of what Plaintiffs argue: The failure to enforce federal law is not a justification for preemption, but one of the major grounds for rejecting preemption. The illegal immigration standard of review looks to the State's need for "protection" from the lack of federal enforcement. "And [*Pennsylvania v.*] *Nelson*[, 350 U.S. 497, 500 (1956)] stated that even in the face of the general immigration laws, States would have the **right** 'to enforce their sedition laws at times when the Federal Government has not occupied the field and is not protecting the entire country from seditious conduct." *De Canas*, 424 U.S. at 362-63 (emphasis added).

---

[7] Plaintiffs' expert, Doris Meissner, as the Commissioner of the Immigration and Naturalization Service, dismantled the agency's interior immigration law enforcement capability, leading to the collapse of federal enforcement. Between 1996 and 2005, workplace arrests for violations of the prohibitions on hiring illegal immigrants declined 99.1%, and penalties to employers declined 99.7%. U.S. Dept. of Homeland Security, *2003 Yearbook of Immigration Statistics*, Sept. 2004, Table 39; U.S. Government Accountability Office, *Immigration Enforcement: Weaknesses Hinder Employment Verification and Worksite Enforcement Efforts*, August 2005, GAO-05-813, at 35, 36, Figures 4 and 5. For example, in Fiscal Year 1997, there were 17,554 worksite arrests, and in Fiscal Year 2005, there were 81. *Id*. Since FY 2005, there have been increases in worksite immigration law enforcement, but the level (5,184 in FY2008) is less than one-third the level when Meissner first became Commissioner. Immigration and Customs Enforcement, "Fact Sheet: Worksite Enforcement," April 30, 2009, www.ice.gov/pi/news/factsheets/worksite.htm.

In addition, Congress never acquiesced in the collapse of immigration law enforcement. For example, in 1996, Congress established a private right of action to supplement failed federal enforcement. Congress was aware that the prohibition on hiring illegal immigrants was not effective to stop hiring illegal immigrants, H. Rep. 104-469, at 129 (1995), so Congress amended the list of RICO predicate crimes[8] to include "any act which is indictable under the Immigration and Nationality Act, section 274 [8 U.S.C. § 1324] (relating to bringing in and harboring certain aliens) . . . if the act . . . was committed for the purpose of financial gain." 18 U.S.C. § 1961(1)(F). That same year, Section 274 was expanded to include multiple hiring of illegal immigrants. 8 U.S.C. § 1324(a)(3)(A), Pub.L. 104-208, Div. C, Title II, § 203(b)(4). State courts have concurrent jurisdiction over civil RICO claims. *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990). Thus, individual workers have successfully brought state and federal RICO claims against employers who used illegal immigrant workers to lower their wages and compete for their jobs.[9]

**The Federal Filings Do Not Aid Plaintiffs:** Plaintiffs contend that the federal filings here and in *Chamber of Commerce v. Candelaria*, No. 09-155, support their position. P. Mem. 20; Plaintiffs' Opposition to Motion to Dismiss, P. 16-17. The federal filings, however, have the same fatal flaws as Plaintiffs' filings here: they

---

[8] The Organized Crime Control Act of 1970, Pub.L. 91-452, 84 Stat. 941, added Chapter 96 to Title 18 of the United States Code, entitled Racketeer Influenced and Corrupt Organizations ("RICO"). 18 U.S.C. §§ 1961-1968; U.S. v. Turkette, 452 U.S. 576, 577-78 (1981). Only certain predicate crimes trigger the application of RICO. 18 U.S.C. § 1961(1).

[9] *Williams v. Mohawk Industries*, 465 F.3d 1277 (11th Cir. 2006), *cert. denied*, 127 S.Ct. 1381 (2007); *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163 (9th Cir. 2002).

conflate the standard of review for legal and illegal immigration,[10] and neither filings respect the State's "right" to enforce illegal immigration sanctions when federal enforcement has failed. *De Canas*, 424 U.S. at 362-63. The federal filings thus do not pay sufficient respect to Congress' intentions, States' powers and Supreme Court precedent, so they give no support to Plaintiffs here.

**Plaintiffs' Simple Remedy:** If Plaintiffs have a concern about what Arizona has done, they have a simple remedy: ask Congress to exercise its unquestioned power to "unmistakably" oust Arizona's law. If, as Plaintiffs and their *amici* argue, Congress intended to do that, it should be of little moment to request that ouster conform to the Supreme Court's express or "clear and manifest" requirement. If, on the other hand, Plaintiffs and their *amici* are complaining about Congress' policy choices, their task may be harder, but that difficulty does not permit this Court to ignore the review standard established by the Supreme Court.

**SB 1070 Is a State Law Targeting Illegal Immigration:** SB 1070 is intended to, and does, target illegal immigrants. SB 1070, § 1. Its purpose is to supplement federal immigration law where federal law enforcement has collapsed. *See, e.g.*, Defendants' Response to Motion for Preliminary Injunction ("D. Opp."), 4-5.

---

[10] *Compare, e.g.*, "Motion for a Preliminary Injunction and Memorandum in Support Thereof" in *United States v. Arizona*, No. 10-cv-1413-PHX-SRB, 13-14 ("Only the federal government may establish immigration policy – namely, the process of "determin[ing] who should or should not be admitted into the country, " *De Canas*, 424 U.S. at 355, and the "conditions lawfully imposed by Congress upon . . . residence of aliens," *Takahashi v. Fish and Game Comm'n*, 334 U.S. 410, 419 (1948).") with *De Canas*, 424 U.S. at 357 ("But we will not presume that Congress, in enacting the INA, intended to oust state authority to regulate the employment relationship covered by § 2805(a) in a manner consistent with pertinent federal laws.").

As the Supreme Court found in *De Canas,* Arizona is entitled to focus on its "local" problems, and "protect" its people, so long as it does so in harmony with the federal statutes. 424 U.S. at 356-57; *Plyler*, 457 U.S. at 219 ("the States may, of course, follow the federal direction").

In this case, Congress could oust state laws against illegal immigration, but has not. In the absence of "clear and manifest" ouster, Arizona has enacted its own licensing penalties for employers of illegal immigrants, and courts have found that it has not been preempted. Arizona can also enact other provisions, in harmony with federal rules for the treatment of illegal immigrants, to protect its economy and its people, as Justice Brennan said in *De Canas*. 424 U.S. at 363. It has done so in SB 1070.

**Conclusion:** Plaintiffs' failure to observe the standard of review, as much or more than their standing problems outlined in the Defendants' Motions to Dismiss, suggests their Motion for Preliminary Injunction is not well-grounded, and Defendants' Fed. R. Civ. Pro. 12(b)(1) Motions should be granted.

RESPECTFULLY SUBMITTED,

Barnaby Zall (*admitted pro hac vice*)
*Counsel for Amicus American Unity*
*Legal Defense Fund*
WEINBERG & JACOBS, LLP
11300 Rockville Pike, #1200
Rockville, MD 20852
301-231-6943
301-984-1200 (f)
bzall@aol.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 13, 2010, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, and sent a Notice of Electronic Filing to the following ECF registrants:

• Adam Netel Bleier adam@sherickbleier.com, clarissa@sherickbleier.com
•Aileen Wheeler awheeler@cov.com
• Albert M Flores amflegal@aol.com
• Andrea Sheridan Ordin aordin@counsel.lacounty.gov
•Anjali Bhargava anjali.bhargava@cco.sccgov.org
• Anne Lai alai@acluaz.org, jessican@acluaz.org
•Anne Cecile Longo longoa@mcao.maricopa.gov, ca-civilmailbox@mcao.maricopa.gov
•Bradley S Phillips brad.phillips@mto.com, james.berry@mto.com, mary.pantoja@mto.com
•Britt Wesley Hanson bhanson@cochise.az.gov, kaguilar@cochise.az.gov
•Bruce P White whiteb@mcao.maricopa.gov
•Bryan B Chambers bchambers@co.gila.az.us
•Carla Gorniak cgorniak@dl.com, courtalert@dl.com
•Carmina OCampo cocampo@apalc.org, cocampo@apalc.org
•Carolyn B Lamm clamm@whitecase.com
•Cecillia D Wang cwang@aclu.org, irptemp1@aclu.org
•Cesar A Perales cperales@latinojustice.org
•Charles F Walker charles.walker@skadden.com
•Chris Myrl Roll chris.roll@pinalcountyaz.gov, kristine.carver@pinalcountyaz.gov
•Christopher Baird Dupont dupontlaw@cox.net
•Christopher R Clark crclark@dl.com
•Connie Choi cchoi@apalc.org
•Cynthia Ann Aziz cynthia@azizimmigrationlaw.com
•Cynthia Valenzuela Dixon cvalenzuela@maldef.org, agodinez@maldef.org
•Daniel Clayton Barr DBarr@perkinscoie.com, docketphx@perkinscoie.com, sneilson@perkinscoie.com
•Daniel Joseph Pochoda dpochoda@acluaz.org, danpoc@cox.net, jessican@acluaz.org
• Daniel R Ortega , Jr danny@rmgmo.com, lupe@rmgmo.com
• Daniel S Jurkowitz Daniel.Jurkowitz@pcao.pima.gov, annette.atkins@pcao.pima.gov, susan.montgomery@pcao.pima.gov
• David Jeremy Bodney dbodney@steptoe.com, awilmot@steptoe.com, phdctnef@steptoe.com
• David Joseph Euchner deuchner@comcast.net

• David Lawrence Abney abneymaturin@aol.com
• Deborah S Smith deb@debsmithlaw.com
• Dennis J Herrera tara.collins@sfgov.org
• Elisabeth Jill Neubauer Elisabeth.Neubauer@mto.com, Marsha.Oseas@mto.com
• Elizabeth Janney Kruschek ekruschek@perkinscoie.com
• Foster Maer fmaer@latinojustice.org
• Gary Michael Baum gary.baum@cityofpaloalto.org, sharon.hanks@cityofpaloalto.org
• George A Nilson george.nilson@baltimorecity.gov
• George Jacob Romero YCAttyCivil@yumacountyaz.gov
• Ghazal Tajmiri tajmiri@nilc.org, tajmiri@nilc.org
• Gladys Limon glimon@maldef.org, agodinez@maldef.org
• Gregory N Pimstone gpimstone@manatt.com
• Greta S Hansen greta.hansen@cco.sccgov.org
• Harini Raghupathi hraghupathi@aclu.org, sdhir@aclu.org
• Ivan E Espinoza-Madrigal iespinoza@maldef.org
• Jack Hamilton Fields jack.fields@co.yavapai.az.us
• James Neil Lombardo neil.lombardo@skadden.com
• Jean Boler jean.boler@seattle.gov
• Jean E Wilcox jwilcox@coconino.az.gov, mrankin@coconino.az.gov
• Jeffrey Allen Imig jimig@hmpmlaw.com, jarchambeau@hmpmlaw.com
• Jennifer AD Lehman jlehman@counsel.lacounty.gov, dbluem@counsel.lacounty.gov
• Joanna S McCallum jmccallum@manatt.com
• Joe A Albo , Jr joe.albo@pinalcountyaz.gov, joe.albo@azbar.org, kristine.carver@pinalcountyaz.gov
• John J Bouma jbouma@swlaw.com, brhoades@swlaw.com, docket@swlaw.com, mzachow@swlaw.com
• Jon Marshall Greenbaum jgreenbaum@lawyerscommittee.org
• Jose L Perez jperez@latinojustice.org
• Jose de Jesus Rivera jrivera@hmpmlaw.com, jlarsen@hmpmlaw.com, jsoto@hmpmlaw.com, slarsen@hmpmlaw.com
• Joseph Young jyoung@co.apache.az.us, josephdyoung7@gmail.com
• Joseph Andrew Kanefield jkanefield@az.gov
• Joseph G Adams jgadams@swlaw.com, docket@swlaw.com, mgarsha@swlaw.com
• Joseph J Ybarra joseph.ybarra@mto.com
• Julie A Su jsu@apalc.org, jsu@apalc.org
• June Ava Florescue jfloresc@co.gila.az.us
• Karen Cassandra Tumlin tumlin@nilc.org
• Katherine Desormeau kate.desormeau@cco.sccgov.org
• Kenneth Andrew Angle kangle@graham.az.gov
• Lance B Payette lance.payette@navajocountyaz.gov

- Lawrence L Hafetz lhafetz@counsel.lacounty.gov
- Linda Meng linda.meng@portlandoregon.gov
- Linton Joaquin joaquin@nilc.org
- Louis S Fidel loufidel@hotmail.com
- Lucas Guttentag lguttentag@aclu.org, irp_ecf@aclu.org
- Lydia Mendoza lmendoza@manatt.com
- Maria R Brandon brandonm@mail.maricopa.gov, fitzpatrickl@mail.maricopa.gov, Garciaj013@mail.maricopa.gov, garciat@mail.maricopa.gov, winkl@mail.maricopa.gov
- Mary Bridget Minder BMinder@perkinscoie.com, docketphx@perkinscoie.com, sneilson@perkinscoie.com
- Matthew Harrison Green mgreenh@mattgreenlaw.com, allisona@mattgreenlaw.com, theresa@mattgreenlaw.com
- Melissa S Keaney keaney@nilc.org, keaney@nilc.org
- Michael Dennis Latham mlatham@co.apache.az.us
- Michael M Markman mmarkman@cov.com, mmarkman@cov.com
- Michael William McCarthy mmccarthy@co.greenlee.az.us, mwmccarthy2002@yahoo.com
- Miguel A Marquez miguel.marquez@cco.sccgov.org
- Nathan Jean Fidel nfidel@hmpmlaw.com, jlarsen@hmpmlaw.com, slarsen@hmpmlaw.com
- Nicholas David Espiritu nespiritu@maldef.org, agodinez@maldef.org
- Nicholas Jason Enoch nicholas.enoch@azbar.org, danette@lubinandenoch.com
- Nina Perales nperales@maldef.org, cleija@maldef.org
- Noel A Fidel noel.fidel@mwmf.com, lori.mandell@mwmf.com, nafidel@mac.com
- Nora A Preciado preciado@nilc.org, preciado@nilc.org
- Omar C Jadwat ojadwat@aclu.org, mlauterback@aclu.org
- Paul F Eckstein PEckstein@perkinscoie.com, cwendt@perkinscoie.com, docketphx@perkinscoie.com
- Paul J Watford paul.watford@mto.com, marie.baltierra@mto.com
- Peter S Holmes peter.holmes@seattle.gpv
- Peter Shawn Kozinets pkozinets@steptoe.com, mmedlin@steptoe.com, phdctnef@steptoe.com
- Peter William Ginder peter.ginder@ci.minneapolis.mn.us
- Phil A Thomas pthomas@leonardcarder.com, pthomas@leonardcarder.com
- Rebecca Ann Reed rreed@hmpmlaw.com, gnielsen@hmpmlaw.com
- Richard Anthony Lopez rlopez@cov.com
- Richard Louis Brusca richard.brusca@skadden.com
- Robert Alexander Taylor robert.taylor@co.mohave.az.us
- Robert Arthur Henry bhenry@swlaw.com, docket@swlaw.com, pwilliams@swlaw.com

- Robert Enrique Pastor rpastor@hmpmlaw.com, jlarsen@hmpmlaw.com, slarsen@hmpmlaw.com
- Robert Glenn Buckelew gbuckelew@co.la-paz.az.us
- Robert S Remar rremar@leonardcarder.com, rremar@leonardcarder.com
- Ronald G Blum rblum@manatt.com
- Russell Reid Abrutyn rabrutyn@marshalhyman.com
- Sean Aloysius Bodkin sean.bodkin@azbar.org
- Sirena Castillo scastillo@manatt.com
- Stanley G Feldman sfeldman@hmpmlaw.com, svancamp@hmpmlaw.com
- Stephanie Fleischman Cherny stephanie.cherny@skadden.com
- Stephen N Zack szack@bsfllp.com
- Stephen W Manning smanning@ilgrp.com
- Susan L Segal susan.segal@ci.minneapolis.mn.us
- Susan Traub Boyd Susan.Boyd@mto.com, Robyn.Bird@mto.com
- Tamara Lange tamara.lange@cco.sccgov.org, alexandra.weight@cco.sccgov.org
- Tanaz Moghadam tmoghadam@aclu.org, arastogi@aclu.org
- Thomas A Saenz tsaenz@maldef.org, tsaenz@maldef.org
- Thomas P Liddy tliddy@mail.maricopa.gov, garciaj013@mail.maricopa.gov, garciat@mail.maricopa.gov
- Victor Viramontes Vviramontes@maldef.org, agomez@maldef.org, mcabadas@maldef.org
- Vikram Ketty Badrinath vbadrinath@aol.com, vikram.badrinath@azbar.org
- Vivek Mittal mittal@nilc.org, mittal@nilc.org
- Wayne Snodgrass wayne.snodgrass@sfgov.org
- Wendy L Feng wfeng@cov.com, mochoa@cov.com
- William Rowe Phelan , Jr william.phelan@baltimorecity.gov
- Yungsuhn Park ypark@apalc.org, ypark@apalc.org
- Yuval Miller yuval.miller@mto.com, susan.ahmadi@mto.com

I also hereby certify that on July 13, 2010, I served the attached document by U.S. Mail on the following, who are not registered participants of the CM/ECF System:

Carmen A Trutanich
William W Carter
Claudia McGee Henry
Gerald M Sato
Los Angeles City Attorney
200 N Main St
915 City Hall East
Los Angeles, CA 90012

Charles J McKee

William Litt
Office of County Counsel City of Monterey
168 W Alisal St 3rd Floor
Salinas, CA 93901

Lisa Kung
Chris Newman
National Day Labor Organizing Network
675 S Park View St Ste B
Los Angeles, CA 90057

Gerald T Hendrickson
Office of the City Attorney
400 City Hall
15 W Kellogg Blvd
Saint Paul, MN 55102

Laura D Blackburne
NAACP
4805 Mt Hope Dr
Baltimore, MD 21215

Nora Frimann
Richard Doyle
Office of the City Attorney
200 E Santa Clara St 16th Fl
San Jose, CA 95113-1905

Ronald Lee
Asian Pacific American Legal Center
1145 Wilshire Blvd Ste 200
Los Angeles, CA 90017

Victor A Bolden
Kathleen M Foster
Vikki Cooper
Office of Corporation Counsel
165 Church St
New Haven, CT 06510

Zach Cowan
Berkeley City Attorneys Office
2180 Milvia St 4th Floor

Berkeley, CA 94704

**A COPY** was also sent with Notice of Electronic Filing, via overnight Express Mail, the 13th day of July, 2010, to:

The Honorable Susan R. Bolton
United States District Court
Sandra Day O'Connor U.S. Courthouse, Suite 522
401 West Washington Street, SPC 50
Phoenix, AZ 85003-2153

/s/ Barnaby Zall

_____________________
Signed: Barnaby Zall