IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Friendly House, et al., | No. CV 10-1061-PHX-SRB |
| Plaintiffs, | **ORDER** |
| vs. | |
| Michael B. Whiting, et al., | |
| Defendants. | |

This matter comes before the Court on Plaintiffs' Renewed Motion for Preliminary Injunction of Arizona Revised Statutes ("A.R.S.") § 13-2928(A) and (B) ("3d PI Mot.") (Doc. 510).

**I.    BACKGROUND**

The facts of this case were set forth in this Court's Order of October 8, 2010, which is incorporated fully herein. (*See* Doc. 447, Oct. 8, 2010, Order at 1-4.) The pertinent details are briefly summarized here. Plaintiffs bring a variety of challenges to Arizona's Senate Bill 1070 ("S.B. 1070"), the "Support Our Law Enforcement and Safe Neighborhoods Act," which was signed into law by Governor Brewer on April 23, 2010.[1] Among S.B. 1070's

---

[1] In this Order, the Court refers to Senate Bill 1070 and House Bill 2162 collectively as "S.B. 1070," describing the April 23, 2010, enactment as modified by the April 30, 2010, amendments.

1  components, Section 5 added A.R.S. § 13-2928 to the Arizona Criminal Code. A.R.S. § 13-
2  2928(A) makes it unlawful for an occupant of a motor vehicle that is stopped on a street,
3  roadway, or highway and is impeding traffic to attempt to hire a person for work at another
4  location. Similarly, A.R.S. § 13-2928(B) provides that it is unlawful for a person to enter a
5  motor vehicle in order to be hired if the vehicle is stopped on a street, roadway, or highway
6  and is impeding traffic. S.B. 1070 had an effective date of July 29, 2010; on July 28, 2010,
7  the Court preliminarily enjoined certain provisions of the law, not including A.R.S. § 13-
8  2928(A) and (B), from taking effect, in the related case *United States v. Arizona*, CV 10-
9  1413-PHX-SRB.

10  Plaintiffs in this case also moved for a preliminary injunction as to a number of
11  provisions of the law. (*See* Doc. 235, Pls.' Mot. for Prelim. Inj. ("1st PI Mot.").) At oral
12  argument on the first Motion for Preliminary Injunction, counsel for Plaintiffs withdrew their
13  request for an injunction running to A.R.S. § 13-2928(A) and (B). (Oct. 8, 2010, Order at
14  35.) In the October 8, 2010, Order, the Court ruled that Plaintiffs' first Motion for
15  Preliminary Injunction was moot in light of the injunction entered in *United States v.*
16  *Arizona*. (*Id.* at 34-35.) The Court also found that Plaintiffs had stated a claim with regard
17  to their challenge to A.R.S. § 13-2928(A) and (B) on First Amendment grounds. (*Id.* at 19-
18  20.)

19  Plaintiffs renewed their Motion for preliminary injunctive relief as to A.R.S. § 13-
20  2928(A) and (B) on January 7, 2011. (Doc. 457, Pls.' Mot. for Prelim. Inj. ("2d PI Mot.") at
21  2.) The Court denied the renewed Motion without prejudice on May 10, 2011, ruling that the
22  outcome would be "at least impacted, if not determined" by the decision of the en banc court
23  of the Ninth Circuit Court of Appeals in *Comite de Jornaleros de Redondo Beach v. City of*
24  *Redondo Beach*, 657 F.3d 936 (9th Cir. 2011) (en banc). (Doc. 487, May 10, 2011, Order at
25  3.) On September 16, 2011, sitting en banc, the Ninth Circuit Court of Appeals reversed the
26  three-judge panel's decision in *Redondo Beach* and held that a Redondo Beach ordinance
27  prohibiting solicitation of business, employment, and contributions on streets and highways
28  was not narrowly tailored to achieve the city's interest in promoting traffic flow and safety

1 and thus violated the free speech guarantees of the First Amendment. 657 F.3d at 948.
2 Plaintiffs now renew their Motion for Preliminary Injunction for the third time, arguing that
3 "[u]nder both the previous holding of this Court and the en banc Ninth Circuit's holding in
4 [*Redondo Beach*], A.R.S. []§ 13-2928(A) and (B) are unconstitutional restrictions on
5 speech." (3d PI Mot. at 1.) The Court heard oral argument on this Motion on January 9, 2012.
6 (*See* Doc. 577, Minute Entry.)

## II.     LEGAL STANDARDS AND ANALYSIS

### A.     Preliminary Injunction Standard

Plaintiffs seek to enjoin A.R.S. § 13-2928(A) and (B). (3d PI Mot. at 1.) "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

### B.     Likelihood of Success on the Merits

#### 1.     Commercial Speech v. Noncommercial Speech

The Intervenor Defendants ("Defendants") argue that Plaintiffs are not likely to succeed on the merits of their claim that A.R.S. § 13-2928(A) and (B) violate the First Amendment because these provisions are "constitutional restrictions on commercial speech," properly evaluated under a more deferential standard than non-commercial speech. (Doc. 553, Defs.' Resp. to 3d PI Mot. ("Defs.' Resp.") at 6.) Plaintiffs argue that the commercial speech test should not be applied to A.R.S. § 13-2928(A) and (B), but, if it were, the provisions would not pass muster under even the more lenient standard. (Doc. 567, Pls.' Reply in Supp. of 3d PI Mot. ("Pls.' Reply") at 1.)

The Supreme Court has defined "commercial speech" as "speech that does no more than propose a commercial transaction." *United States v. United Foods, Inc.*, 533 U.S. 405, 409 (2001); *see also Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 562 (1980) (defining "commercial speech" as "expression related solely to the economic interests of the speaker and its audience"). Commercial speech is generally

1    accorded less protection than other kinds of speech. *United Foods*, 533 U.S. at 409.

2            Plaintiffs argue that speech by day laborers soliciting work "is not 'commercial
3    speech' under the First Amendment because day labor solicitation inextricably intertwines
4    a request for work with political and economic messages communicating day laborers'
5    existence, need for subsistence, social value and claims to inclusion." (Pls.' Reply at 8.)
6    Although commercial speech is entitled to less protection under the First Amendment,
7    "[c]ommercial speech does not retain its commercial character 'when it is inextricably
8    intertwined with otherwise fully protected speech.'" *Hunt v. City of L.A.*, 638 F.3d 703, 715
9    (9th Cir. 2011) (quoting *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 796
10   (1988)). On the contrary, "where the two components of speech can be easily separated, they
11   are not 'inextricably intertwined.'" *Id.*  Plaintiffs cite *Redondo Beach*, in which the court
12   stated, "Solicitation is characteristically intertwined with informative and perhaps persuasive
13   speech seeking support for particular causes or for particular views on economic, political,
14   or social issues, so that without solicitation the flow of such information and advocacy would
15   likely cease." 657 F.3d at 945 (quotations and citation omitted). However, the *Redondo*
16   *Beach* court went on to comment that the ordinance being reviewed in that case was not
17   limited to commercial solicitation, so "we cannot, and do not, decide the [o]rdinance's
18   validity under the Supreme Court's 'commercial speech' case law." *Id.* at 945 n.2.

19           In contrast, A.R.S. § 13-2928(A) and (B) expressly apply to hiring, picking up, and
20   transporting people for work. *See* A.R.S. § 13-2928(A), (B). The speech of day laborers
21   seeking work from passing motorists "does no more than propose a commercial transaction"
22   between the day laborer and the potential employer. *See United Foods*, 533 U.S. at 409. The
23   Court finds that the speech impacted by these provisions is exclusively commercial speech,
24   and, even if it were not, any intertwined expression of day laborers' existence or social value
25   is easily separated from the commercial speech involved in soliciting work. Thus, the Court

is obliged to apply the commercial speech test as established by the Supreme Court.[2, 3]

### 2. Commercial Speech Test and Application

The Supreme Court set forth a four-part test to determine the constitutionality of a restriction on commercial speech in *Central Hudson*:

> (1) if the communication is neither misleading nor related to unlawful activity, then it merits First Amendment scrutiny as a threshold matter; in order for the restriction to withstand such scrutiny, (2) [t]he State must assert a substantial interest to be achieved by restrictions on commercial speech; (3) the restriction must directly advance the state interest involved; and (4) it must not be more extensive than is necessary to serve that interest.

*World Wide Rush, LLC v. City of L.A.*, 606 F.3d 676, 684 (9th Cir. 2010) (quotations and citation omitted). "[T]he last two steps of the *Central Hudson* analysis basically involve a consideration of the fit between the legislature's ends and the means chosen to accomplish those ends." *Id.* (quotation and citation omitted). The Supreme Court recently refined the *Central Hudson* test, holding that if a ban on commercial speech is content-based, "heightened judicial scrutiny is warranted." *Sorrell v. IMS Health, Inc.*, 131 S. Ct. 2653, 2664 (2011); *see also id.* at 2673 (Breyer, J., dissenting) (noting that the majority applies a "far stricter, specially 'heightened' First Amendment standard," rather than the usual *Central Hudson* test).

---

[2] Because the Court concludes that the speech at issue here is properly analyzed as commercial speech, *Redondo Beach* does not control.

[3] Plaintiffs point out that in the October 8, 2010, Order, the Court found that A.R.S. § 13-2928(A) and (B) were content-based and subject to strict scrutiny. (3d PI Mot. at 8 (citing Oct. 8, 2010, Order at 20).) While this is true, in the previous Order, the Court was considering a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), which only tests the sufficiency of the pleadings, not a Motion for a Preliminary Injunction, which examines the likelihood of success on the merits. Furthermore, neither party raised the question of commercial speech in the previous round of Motions, so the Court was not squarely presented with this issue. Application of the law of the case doctrine, "a judicial invention designed to aid in the efficient operation of court affairs," is discretionary. *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir. 1990). In its discretion, the Court now concludes that the commercial speech test applies to the determination of whether Plaintiffs have shown a likelihood of success on the merits of their claim that A.R.S. § 13-2928(A) and (B) are barred by the First Amendment.

- 5 -

The Court has previously found that A.R.S. § 13-2928(A) and (B) are content-based because they apply only to speech soliciting employment and not to other types of solicitation speech. (Oct. 8, 2010, Order at 20); *cf. City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429 (1993) (considering a ban on the use of newsracks for commercial handbills, as opposed to newspapers and holding that "the very basis for the regulation is the difference in content between ordinary newspapers and commercial speech. . . . Thus, by any commonsense understanding of the term, the ban in this case is 'content based.'"). In *Sorrell*, the Supreme Court emphasized the second, third, and fourth elements of the *Central Hudson* test, stating, "To sustain the targeted, content-based burden [the statute at issue] imposes on protected expression, the State must show at least that the statute directly advances a substantial governmental interest and that the measure is drawn to achieve that interest." 131 S. Ct. at 2667-68. Accordingly, if a ban on commercial speech is content-based, *Sorrell* instructs that it must be "drawn to achieve" "a substantial governmental interest," whereas the *Central Hudson* test requires that the regulation not be "more extensive than is necessary to serve that interest." *Compare id.*, *with Cent. Hudson*, 447 U.S. at 566.

### a.     Related to Unlawful Activity

Defendants argue that the "conduct" restricted by A.R.S. § 13-2928(A) and (B) is "blocking or impeding traffic" and "is already unlawful." (Defs.' Resp. at 9.) However, this argument misses the mark: the test requires that the communication "concern lawful activity and not be misleading." *Cent. Hudson*, 447 U.S. at 566. The communication allegedly impacted by Arizona's law concerns day labor, not blocking or impeding traffic. Defendants do not argue, as indeed they cannot, that day labor in and of itself is unlawful. *See Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 772 (1976) (observing that commercial speech is unprotected by the First Amendment where "the transactions proposed . . . are themselves illegal in any way"); *Hispanic Interest Coal. of Ala. v. Bentley*, No. 5:11-CV-2484-SLB, 2011 WL 5516953, at *34 (N.D. Ala. Sept. 28, 2011) (holding that "the solicitation of day labor . . . is a 'lawful concern'"). Therefore, the Court finds that these provisions "merit[] First Amendment scrutiny as a threshold matter." *See*

- 6 -

*World Wide Rush*, 606 F.3d at 684 (quotation and citation omitted).

### b.     Governmental Interest

Defendants identify several interests that Arizona seeks to advance through these provisions: "crime reduction, traffic safety, economic development, and protecting the aesthetics of its communities."[4] (Defs.' Resp. at 9.) Plaintiffs do not contest that these are substantial governmental interests. Indeed, all of Arizona's asserted interests have been found to be at least "substantial." *See City of L.A. v. Alameda Books, Inc.*, 535 U.S. 425, 435 (2002) (finding that "reducing crime is a substantial government interest"); *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 507-08 (1981) (concluding that there can be no "substantial doubt that the twin goals that the ordinance seeks to further–traffic safety and the appearance of the city–are substantial governmental goals"); *Hampton Int'l Commc'ns, Inc. v. Las Vegas Convention & Visitors Auth.*, 913 F. Supp. 1402, 1412 (D. Nev. 1996) (recognizing a substantial governmental interest in regulating economic development where the government was engaged in "a permitted commercial activity"); *cf. One World One Family Now v. City & Cnty. of Honolulu*, 76 F.3d 1009, 1012 (9th Cir. 1996) (noting that the lower court found that "protecting the local merchant economy" was a "legitimate governmental interest[]"). The Court finds that Arizona has asserted several substantial governmental interests that animate A.R.S. § 13-2928(A) and (B), including the one on which Defendants principally rely, traffic safety.

### c.     Direct Advancement of Interest

Turning to the third element of the commercial speech test, the Court next considers whether the government's interest is directly advanced by the challenged provisions. Defendants argue that A.R.S. § 13-2928(A) and (B) "directly advance Arizona's interest in traffic safety by prohibiting in-street employment solicitation that blocks or impedes traffic." (Defs.' Resp. at 10.) Defendants assert that when people solicit employment in the street, it

---

[4] Although Defendants name these four interests, they only argue with respect to one: traffic safety.

- 7 -

1  creates a particularly grave traffic safety problem. (*Id.* at 2-3; *see also, e.g.*, Doc. 470, Defs.'
2  Resp. to 2d PI Mot., Ex. E, Decl. of Cory L. Braddock, Exs. 3, 4.) Plaintiffs do not argue that
3  the regulations do not directly advance the government interest in promoting traffic safety.
4  A regulation "may not be sustained if it provides only ineffective or remote support for the
5  government's purpose." *Cent. Hudson*, 447 U.S. at 564. This inquiry focuses on whether the
6  regulation advances the governmental interest in its general application, not specifically with
7  respect to a particular speaker. *See Vanguard Outdoor, LLC v. City of L.A.*, 648 F.3d 737,
8  742-43 (9th Cir. 2011). In other words, is the ordinance impermissibly underinclusive? *See*
9  *Metro Lights, LLC v. City of L.A.*, 551 F.3d 898, 907 (9th Cir. 2009).

10  A ban on speech or activity "may be constitutionally underinclusive under *Central*
11  *Hudson* when it has exceptions that undermine and counteract that interest the government
12  claims it has adopted the law to further because such a regulation cannot directly and
13  materially advance its aim." *Vanguard*, 648 F.3d at 742 (quotations and citation omitted).
14  Such a regulation is barred in two situations: "(1) first, if the exception ensures that the
15  regulation will fail to achieve its end, it does not materially advance its aim; and (2) second,
16  exceptions that make distinctions among different kinds of speech must relate to the interest
17  the government seeks to advance." *Id.* In *Metromedia*, the Supreme Court rejected the
18  argument that the city "denigrate[d] its interest in traffic safety and beauty and defeat[ed] its
19  own case by permitting onsite advertising and other specified signs" while banning offsite
20  advertising. *Metromedia*, 453 U.S. at 510-11. The Supreme Court concluded that the law's
21  non-application to one type of sign, offsite advertising, did not alter the direct relation
22  between the city's goals and the ban's application to those signs. *Id.* at 511.

23  The Court finds that here, as in *Metromedia*, the fact that A.R.S. § 13-2928 (A) and
24  (B) only limit solicitation of employment and not other types of solicitation does not weaken
25  the link between the ban and Arizona's interest in traffic safety. *See id.* at 509 ("'We would
26  be trespassing on one of the most intensely local and specialized of all municipal problems
27  if we held that this regulation had no relation to the traffic problem of New York City.'"
28  (quoting *Ry. Express Agency v. New York*, 336 U.S. 106, 109 (1949))). Arizona may elect to

privilege other kinds of solicitation above employment solicitation. *See id.* at 512; *Metro Lights*, 551 F.3d at 911. Even though the ban is content-based and by logical extension underinclusive to some degree, it still bans a significant amount of solicitation that would theoretically take place if permitted and thereby directly advances the traffic safety goal. Significantly, A.R.S. § 13-2928 (A) and (B) ban solicitation of employment only where that solicitation impedes traffic. The third element of the commercial speech test is satisfied.

### d. Drawn to Achieve Governmental Interest

As explained above, *Sorrell* modified the commercial speech test originally set forth in *Central Hudson* by holding that a content-based restriction on commercial speech must be "drawn to achieve" a substantial governmental interest. 131 S. Ct. at 2667-68. "There must be a fit between the legislature's ends and the means chosen to accomplish those ends." *Id.* at 2668 (quotation and citation omitted). The pre-*Sorrell* version of this element, contained in the *Central Hudson* test, is "substantially similar" to the time, place, and manner restrictions for content-neutral speech. *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 477 (1989) (quotation and citation omitted); *see also Moser v. F.C.C.* 46 F.3d 970, 973 (9th Cir. 1995). The *Central Hudson* test does not require that the government employ the least restrictive means of advancing its interest. *Bd. of Trs.*, 492 U.S. at 477. But the Supreme Court required that the means be narrowly tailored to the end, even before *Sorrell* tightened the test for content-based bans on commercial speech. *Id.* at 480.

The Court finds that Defendants have not shown that A.R.S. § 13-2928(A) and (B), which are content-based restrictions of speech, are drawn to achieve the substantial governmental interest in traffic safety. As an initial matter, because the regulation is content-based and applies only to solicitation of employment, not other types of solicitation, it appears to be structured to target particular speech rather than a broader traffic problem. *See Metro Lights*, 551 F.3d at 905 n.8 (observing that underinclusivity is relevant to both the third and fourth prongs of the *Central Hudson* analysis). The adoption of a content-based ban on speech indicates that the legislature did not draft these provisions after careful evaluation of the burden on free speech. *See Discovery Network*, 507 U.S. at 417, 428-30.

"[T]he existence of obvious, less burdensome alternatives is 'a relevant consideration in determining whether the "fit" between ends and means is reasonable.'" *Berger v. City of Seattle*, 569 F.3d 1029, 1041 (9th Cir. 2009) (quoting *Discovery Network*, 507 U.S. at 417 n.13); *see also Ballen v. City of Redmond*, 466 F.3d 736, 743-44 (9th Cir. 2006). Here, numerous other traffic regulations are already in place in Arizona to "directly address traffic and safety without restricting speech." (*See* 3d PI Mot. at 6 (citing A.R.S. §§ 13-2906(A), 28-873(A), 28-905).) For example, civil penalties exist for stopping or parking a car in such a way that it impedes traffic. A.R.S. § 28-873(A). It is also unlawful to open a door on a motor vehicle if it interferes with traffic, and a maximum sentence of 30 days in jail may be imposed if a person "recklessly interferes with the passage of any highway or public thoroughfare by creating an unreasonable inconvenience or hazard." *Id.* §§ 13-2906(A), 28-905; *see also id.* §§ 13-707(A), 28-704(A), 28-871(A) (other pre-existing traffic and misdemeanor restrictions on impeding traffic that encompass the behavior targeted by A.R.S. § 13-2928(A) and (B)).[5]

The Court also notes that S.B. 1070 contains a purposes clause that is relevant to this analysis. Section 1 of S.B. 1070, which has no A.R.S. citation, states that "the intent of [S.B. 1070] is to make attrition through enforcement the public policy of all state and local government agencies in Arizona" and that "[t]he provisions of this act are intended to work together to discourage and deter the unlawful entry and presence of aliens and economic activity by persons unlawfully present in the United States." Section 1 also states that "there is a compelling interest in the cooperative enforcement of federal immigration laws throughout all of Arizona." This purposes clause applies to all sections of S.B. 1070, and nowhere does it state that a purpose of the statutes and statutory revisions is to enhance traffic safety. Rather, A.R.S. § 13-2928(A) and (B), like the other parts of S.B. 1070, are

---

[5] The fact that A.R.S. § 13-2928(A) and (B) are additions to Title 13, Arizona's Criminal Code, rather than Chapter 3 of Title 28 of the A.R.S., which governs traffic and vehicle regulation, also undermines an argument that these provisions are actually "drawn to" address a traffic safety problem.

- 10 -

1 explicitly intended "to make attrition through enforcement the public policy of all state and 2 local government agencies in Arizona" and "to discourage and deter the unlawful entry and 3 presence of aliens and economic activity by persons unlawfully present in the United States." 4 The fact that A.R.S. § 13-2928(A) and (B) were created as part of a package of statutes and 5 revisions aimed at perceived problems related to unlawful immigration also weighs against 6 a finding that the provisions are "drawn to" address a traffic problem.

7 The commercial speech test "ensure[s] not only that the State's interests are 8 proportional to the resulting burdens placed on speech but also that the law does not seek to 9 suppress a disfavored message." *Sorrell*, 131 S. Ct. at 2668. Because A.R.S. § 13-2928(A) 10 and (B) are not drawn to achieve Arizona's goal of promoting traffic safety, the Court finds 11 that Plaintiffs have shown a likelihood of success on the merits of their claim that the First 12 Amendment bars these provisions.

### C. Irreparable Harm

14 The Supreme Court has repeatedly recognized the "basic doctrine of equity 15 jurisprudence that courts of equity should not act . . . when the moving party has an adequate 16 remedy at law and will not suffer irreparable injury if denied equitable relief." *Younger v.* 17 *Harris*, 401 U.S. 37, 43-44 (1971). Thus Plaintiffs have the burden to establish that, absent 18 a preliminary injunction, there is a likelihood–not just a possibility–that they will suffer 19 irreparable harm. *Winter*, 555 U.S. at 20-21. The Ninth Circuit Court of Appeals has stated 20 "'that an alleged constitutional infringement will often alone constitute irreparable harm.'" 21 *Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997) (quoting *Assoc. Gen.* 22 *Contractors of Cal., Inc. v. Coal. for Econ. Equal.*, 950 F.2d 1401, 1412 (9th Cir. 1991)). In 23 the free speech context, the Supreme Court has held that "[t]he loss of First Amendment 24 freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." 25 *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *accord Klein v. City of San Clemente*, 584 F.3d 26 1196, 1207-08 (9th Cir. 2009).

27 The record contains evidence showing that the individual day laborer Plaintiffs and 28 day laborer members of some of the organizational Plaintiffs are being chilled from soliciting

- 11 -

day labor. (*See* 3d PI Mot. at 12; *see also id.*, Ex. 2, Decl. of Alison J. Harrington ¶¶ 10-11; 3d PI Mot., Ex. 3, Decl. of Tupac Enrique ¶¶ 10-13.) The Court has concluded that Plaintiffs are likely to succeed on the merits of their First Amendment challenge to A.R.S. § 13-2928(A) and (B), and that conclusion, when coupled with Plaintiffs' evidence regarding the chilling of individuals' solicitation of day labor, demonstrates that Plaintiffs are likely to suffer irreparable harm in the absence of an injunction.

### D. The Balance of the Equities and the Public Interest

The Court considers the final two elements of the preliminary injunction test together. Plaintiffs have the burden to show that the balance of equities tips in their favor and that a preliminary injunction is in the public interest. *Winter*, 555 U.S. at 20. "A preliminary injunction is an extraordinary remedy never awarded as of right." *Id*. at 24. "In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief,'" paying particular attention to the public consequences. *Id.* (quoting *Amoco Prod. Co. v. Vill. of Gambell, Alaska*, 480 U.S. 531, 542 (1987)).

Plaintiffs have demonstrated that they have a significant interest in exercising their First Amendment rights, as explained above. Not only is the exercise of free speech a crucial civil right, Plaintiffs have shown that they and their members are being chilled from soliciting employment by the threat of enforcement of A.R.S. § 13-2928(A) and (B). Defendants assert a countervailing interest "in the safety of [Arizona's] streets and reducing the crime, intimidation, and property destruction that result[] when large groups of day laborers congregate in and along the roadside." (Defs.' Resp. at 17.) The Court finds that, while Defendants' interest is significant, the balance of hardships tips in Plaintiffs' favor. Defendants have not shown that A.R.S. § 13-2928(A) and (B) are drawn to achieve Arizona's goal of ensuring traffic safety or any of the other specified governmental interests. On the other hand, Plaintiffs have presented evidence that individual Plaintiffs and members of organizational Plaintiffs are being directly impacted by the threat of enforcement under these provisions. Given the strong protection traditionally accorded to First Amendment

rights and considering all the evidence in the record, the Court concludes that the balance of the equities favors Plaintiffs.

The public interest inquiry primarily focuses on the impact on non-parties, as opposed to parties. *Sammartano v. First Jud. Dist. Ct.*, 303 F.3d 959, 974 (9th Cir. 2002). "Courts considering requests for preliminary injunctions have consistently recognized the significant public interest in upholding First Amendment principles." *Id.* (collecting cases). Here, as in other cases implicating freedom of speech, continuing enforcement of a regulation that likely violates the First Amendment would infringe not only the rights of Plaintiffs and their members, but also of other day laborers and potential employers. Defendants have not shown a competing public interest that is compelling enough to outweigh the public interest in a free exchange of ideas. *Cf. Hale v. Dep't of Energy*, 806 F.2d 910, 918 (9th Cir. 1986) (finding that the plaintiffs' First Amendment rights were outweighed by the government's interest in the safety and security of a nuclear testing site). It is not in the public interest to enforce a law that likely violates the First Amendment. This factor, too, favors Plaintiffs.

### III. CONCLUSION

Plaintiffs have demonstrated that they are likely to succeed on the merits of their claim that A.R.S. § 13-2928(A) and (B) violate the First Amendment. Plaintiffs have also shown that they are likely to suffer irreparable harm in the absence of an injunction, that the balance of equities tips in their favor, and that the public interest favors injunctive relief.

**IT IS THEREFORE ORDERED** granting Plaintiffs' Renewed Motion for Preliminary Injunction of A.R.S. § 13-2928(A) and (B) (Doc. 510).

**IT IS FURTHER ORDERED** preliminarily enjoining Defendants from enforcing A.R.S. § 13-2928(A) and (B).

DATED this 29th day of February, 2012.

_____
Susan R. Bolton
United States District Judge