**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Friendly House, et al., | No. CV 10-1061-PHX-SRB |
| Plaintiffs, | **ORDER** |
| vs. | |
| Michael B. Whiting, et al., | |
| Defendants. | |

This matter comes before the Court on Intervenor Defendants Governor Janice K. Brewer and the State of Arizona's (collectively, "Arizona") Motion to Dismiss the Individual Plaintiffs and Strike Class Action Allegations ("Ariz.'s Mot.") (Doc. 562). The Motion is joined by Defendants Joseph Arpaio, William Montgomery, Paul Babeu, James Walsh, and Larry Dever. (*See* Docs. 564, 565, 568.)

**I.   BACKGROUND**

The facts of this case were set forth in this Court's Order of October 8, 2010, which is incorporated fully herein. (*See* Doc. 447, Oct. 8, 2010, Order ("MTD Order") at 1-4.) The pertinent details are briefly summarized here. The instant litigation challenges Arizona's Senate Bill 1070 ("S.B. 1070"), which was signed into law by Governor Brewer on April 23,

2010.[1] Plaintiffs filed suit on May 17, 2010. (Doc. 1, Compl. for Declaratory & Injunctive Relief ("Compl.") at 61.) In their original Complaint, Plaintiffs asserted six causes of action under 42 U.S.C. § 1983 for violations of the following provisions of the United States Constitution: the Supremacy Clause (Count 1); the Equal Protection Clause (Count 2); the First Amendment (Count 3); the Fourth Amendment (Count 4); the Due Process Clause (Count 6); and the right to travel under the Privileges and Immunities Clause (Count 7). (*Id.* ¶¶ 198, 204-214.) Plaintiffs also asserted that S.B. 1070 violates Article II, § 8 of the Arizona Constitution (Count 5) and 42 U.S.C. § 1981 (Count 8). (*Id.* ¶¶ 199-203, 215-18.)

On October 8, 2010, the Court reviewed Plaintiff's original Complaint and dismissed for lack of standing Plaintiffs' First Amendment challenge to Section 2 of S.B. 1070 and Plaintiffs' claim for violation of the right to travel. (MTD Order at 38.) The Court also dismissed Plaintiffs' First Amendment challenge to A.R.S. § 13-2928(C) of Section 5 of S.B. 1070 and Plaintiffs' claim that Sections 2 and 5 were impermissibly vague in violation of the Due Process Clause. (*Id.*)

Plaintiffs filed a First Amended Complaint on October 31, 2011, removing the dismissed claims and related allegations and replacing several of the individual plaintiffs. (*See* Doc. 511, 1st Am. Compl. for Declaratory & Injunctive Relief ("FAC") ¶¶ 21-29, 189-204.) In the FAC, nine individuals (collectively, "Individual Plaintiffs") and fourteen organizations assert the following seven causes of action challenging S.B. 1070: violation of the Supremacy Clause (Count 1); violation of the Equal Protection Clause (Count 2); violation of the First Amendment (Count 3); violation of the Fourth Amendment (Count 4); violation of Article II, § 8 of the Arizona Constitution (Count 5); violation of the Due Process Clause (Count 6); and violation of 42 U.S.C. § 1981 (Count 7). (*Id.* ¶¶ 7-29, 177-208.) The Individual Plaintiffs purport to represent five proposed classes. (*Id.* ¶¶ 161-65.)

---

[1] In this Order, the Court refers to Senate Bill 1070 and House Bill 2162 collectively as "S.B. 1070," describing the April 23, 2010, enactment as modified by the April 30, 2010, amendments.

- 2 -

Arizona moves to dismiss the Individual Plaintiffs from the FAC pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that the Individual Plaintiffs lack standing. (Ariz.'s Mot. at 2, 6-12, 16-17.) Arizona also moves to strike the class action allegations from the FAC, arguing that the proposed classes cannot be certified as a matter of law because no Individual Plaintiff has standing to represent any of the proposed classes and each proposed class is defined to include persons without standing. (*Id.* at 1-2, 12-16.) The Court heard oral argument on the Motion on March 26, 2012. (*See* Doc. 620, Minute Entry.)

## II. LEGAL STANDARDS AND ANALYSIS

### A. Motion to Dismiss the Individual Plaintiffs

#### 1. Standing

"Article III of the Constitution limits the judicial power of the United States to the resolution of [c]ases and [c]ontroversies, and Article III standing . . . enforces the Constitution's case-or-controversy requirement." *Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 597-98 (2007) (internal quotations omitted). Standing requires that plaintiffs have a "personal stake in the outcome" in order to "assure that concrete adverseness which sharpens the presentation of issues" necessary for the proper resolution of constitutional questions. *Baker v. Carr*, 369 U.S. 186, 204 (1962).

As the party invoking federal jurisdiction, the plaintiff bears the burden of establishing standing. *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010). Standing focuses on "whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *Allen v. Wright*, 468 U.S. 737, 752 (1984). "'[A] plaintiff must demonstrate standing for each claim he seeks to press' and 'for each form of relief' that is sought." *Davis v. F.E.C.*, 128 S. Ct. 2759, 2769 (2008) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)); *see also Oregon v. Legal Servs. Corp.*, 552 F.3d 965, 969 (9th Cir. 2009). Where, as here, a defendant challenges the plaintiff's standing based solely on the insufficiency of the allegations in the complaint, courts accept all material allegations in the complaint as true and construe the complaint in favor of the plaintiff. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) (noting that a Rule 12(b)(1) attack on standing may be either

facial or factual and that where a party presents a facial challenge to standing the court confines its review to the allegations of the complaint); *see also Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009) (noting that where a defendant makes a Rule 12(b)(1) facial attack challenging the sufficiency of the allegations, the court must assume that the allegations are true and draw all reasonable inferences in favor of the plaintiff). In addition, courts "presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (quotation and alteration omitted).

In order to have standing pursuant to Article III, a plaintiff must show (1) an "injury in fact" that is concrete and particularized and actual or imminent (not conjectural or hypothetical); (2) that the injury is fairly traceable to the challenged action of the defendant; and (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan*, 504 U.S. at 560-61; *see also Summers v. Earth Island Inst.*, 129 S. Ct. 1142, 1149 (2009). Where a plaintiff seeks injunctive relief, the plaintiff must demonstrate a significant possibility of future harm. *San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996). When challenging the operation of a statute, a plaintiff "must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (citation omitted); *see also Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139-40 (9th Cir. 2000) (noting that courts must determine "whether the plaintiffs face a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement, or whether the alleged injury is too imaginary or speculative to support jurisdiction" (quotations and citations omitted)). An individual "does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough." *Babbitt v*, 442 U.S. at 298 (quotation omitted). A plaintiff has standing to challenge a criminal statute prior to the statute's enforcement where the plaintiff alleges "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute," and a "credible threat" of prosecution exists. *Id.*; *see also San Diego Cnty. Gun Rights*, 98 F.3d at 1126-27.

### 2. Standing of the Individual Plaintiffs

The Individual Plaintiffs assert standing on the basis of several categories of injury, including increased risk of (i) stop or detention pursuant to S.B. 1070 based on their appearance and limited English-speaking ability, (ii) detention or arrest as a result of an inability to present immigration documents, (iii) detention as a result of soliciting work in a public place, and (iv) prosecution under the transporting and harboring provisions of S.B. 1070. (FAC ¶¶ 21-29; Ariz.'s Mot. at 6-12; Doc. 578, Pls.' Opp'n to Ariz.'s Mot. ("Resp.") at 6-16.) Arizona argues that the Individual Plaintiffs have failed to demonstrate that they will suffer an injury in fact because the alleged injuries are too speculative. (Ariz.'s Mot. at 6-14.) Arizona does not argue that the Individual Plaintiffs' alleged injuries are not fairly traceable to the challenged conduct or that the injuries would not be redressed by a favorable decision. (*See id.*) In addition, Arizona does not argue that the Individual Plaintiffs' claims fail on prudential standing grounds. (*See id.*)[2, 3]

#### i. Injuries Arising from Appearance and Language Ability

The Individual Plaintiffs assert several injuries arising from the operation and enforcement of S.B. 1070. (*See* FAC ¶¶ 183-88; 192-208.) According to Plaintiffs, S.B. 1070 impermissibly and invidiously targets Plaintiffs who are racial and national origin minorities and subjects them to stops, detentions, questioning, and arrests because of their race or national origin, depriving Plaintiffs of the equal protection of the laws in violation of the Equal Protection Clause and discriminating against Plaintiffs on the basis of alienage,

---

[2] The Court finds that the Individual Plaintiffs meet the prudential standing requirements because the Individual Plaintiffs are asserting their own legal rights, are not attempting to adjudicate generalized grievances more appropriately addressed in the representative branches, and their complaint falls within the zone of interests protected by the laws invoked. *See Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004).

[3] Because Arizona also moves to strike the class allegations by arguing that the Individual Plaintiffs do not have standing to represent the proposed classes, the Court will consider all of the alleged injuries of each Individual Plaintiff even after finding that an Individual Plaintiff has alleged a sufficient injury in fact to establish standing to raise at least one claim and thus avoid dismissal.

- 5 -

national origin, and race in violation of 42 U.S.C. § 1981. (*Id.* ¶¶ 186-87; 207-08.) Plaintiffs also assert that Sections 2 and 6 of S.B. 1070 will result in unreasonable, warrantless seizures in violation of the Fourth Amendment, the Arizona Constitution, and the Due Process Clause. (*Id.* ¶¶ 194-96; 198-200, 203-04.)

Arizona argues that any injuries resulting from the Individual Plaintiffs' physical characteristics or limited English-speaking abilities are too speculative to establish standing and that the Individual Plaintiffs' allegations of past police misconduct fail to establish a credible threat of future harm. (Ariz.'s Mot. at 6-8.) Plaintiffs argue that the Individual Plaintiffs have alleged a realistic danger of injury because Sections 2 and 6 of S.B. 1070 cannot be implemented in a race-neutral manner and the Individual Plaintiffs' personal characteristics thus put them at an increased risk of being subject to extended detention and interrogation under Section 2 and warrantless arrest under Section 6. (Resp. at 6-8.) Section 2 of S.B. 1070 requires law enforcement officers to make a reasonable attempt, when practicable, to determine an individual's immigration status during any lawful stop, detention, or arrest where reasonable suspicion exists that the person is unlawfully present in the United States. A.R.S. § 11-1051(B). Section 6 of S.B. 1070 permits an officer to arrest a person without a warrant if the officer has probable cause to believe that "the person to be arrested has committed any public offense that makes the person removable from the United States." *Id.* § 13-3883(A)(5).

The standing inquiry focuses on whether the Individual Plaintiffs have alleged "a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement, or whether the alleged injury is too imaginary or speculative to support jurisdiction." *See Thomas*, 220 F.3d at 1139-40. Analysis of the Individual Plaintiffs' standing does not depend on the merits of the underlying claim. *See ASARCO Inc. v. Kadish*, 490 U.S. 605, 624 (1989) ("[A]lthough federal standing 'often turns on the nature and source of the claim asserted,' it 'in no way depends on the merits of the [claim].'" (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975))). The asserted injuries support standing if the Individual Plaintiffs' allegations related to their appearance and language ability demonstrate a realistic

- 6 -

1 danger that the Individual Plaintiffs will sustain the alleged injuries as a result of S.B. 1070's
2 operation or enforcement. *See Babbitt*, 442 U.S. at 298; *Thomas*, 220 F.3d at 1139-40.
3 Prospective injury under a challenged statute is too speculative where the injury is dependent
4 upon avoidable encounters with the police or unpredictable police misconduct during those
5 encounters. *See City of L.A. v. Lyons*, 461 U.S. 95, 106-07 (1983) (finding that the plaintiff
6 did not have standing to seek injunctive relief addressing the wrongful use of choke holds
7 because even assuming that the plaintiff would again encounter the police, the plaintiff could
8 not credibly assert either that "all police officers . . . always choke any citizen" that they
9 encounter or that the officers' employer "ordered or authorized police officers to act in such
10 a manner"); *O'Shea v. Littleton*, 414 U.S. 488, 497 (1974) (finding no standing to seek
11 injunctive relief prohibiting discriminatory sentencing because the court assumed "that
12 [plaintiffs] w[ould] conduct their activities within the law and so avoid prosecution and
13 conviction as well as exposure to the challenged" practices).

### a. Realistic Danger of Direct and Actual Injury

15 Individual Plaintiffs C.M., Jim Shee, Jose Angel Vargas, Maura Castillo, Maria
16 Morales, John Doe # 1, and Jane Doe # 3 allege that they fear being stopped, detained, or
17 arrested during the enforcement of S.B. 1070 due to their appearance and limited English-
18 speaking ability or accented speech. (*See* FAC ¶¶ 22, 24-29.) The Individual Plaintiffs assert
19 that Sections 2 and 6 cannot be implemented in a race-neutral manner and that personal
20 characteristics make it likely that they will be subjected to investigation under Sections 2 and
21 6 based on their race. (Resp. at 6-8.) It is realistic that, as Plaintiffs argue, law enforcement
22 officers will rely on physical and linguistic characteristics identifying individuals by race or
23 national origin in developing reasonable suspicion of unlawful presence under Section 2 or
24 probable cause to believe that a public offense makes an individual removable under Section
25 6. (*See* FAC ¶ 156); *see also* A.R.S. §§ 11-1051(B), 13-3883(A)(5). These Individual
26 Plaintiffs have identified and alleged characteristics presenting a "realistic danger" that they
27 will be subjected to injury as a result of the operation and enforcement of Sections 2 and 6.
28 *See Babbitt*, 442 U.S. at 298; *see also Hispanic Interest Coal. of Ala. v. Bentley*, No. 5:11-

CV-2484-9SLB, 2011 WL 5516953, at *37 (N.D. Ala. Sept. 28, 2011) (finding that a plaintiff had standing to challenge a provision requiring law enforcement officers to investigate immigration status during any lawful stop, detention, or arrest if reasonable suspicion exists to believe an individual is unlawfully present where the plaintiff alleged that she would be subject to unlawful interrogation and detention based on her Latina appearance and lack of state-approved identity documents).

The Individual Plaintiffs' alleged injuries are not unduly speculative and are not based on future police misconduct or avoidable encounters with the police. The Individual Plaintiffs allege injuries arising directly from the operation and enforcement of S.B. 1070, not from the misconduct of any individual law enforcement officer. *See* A.R.S. § 11-1051(B) (requiring law enforcement officers to investigate the immigration status of every individual during any lawful stop, detention, or arrest if the officers have reasonable suspicion to believe that the individual is unlawfully present in the United States); A.R.S. § 13-3883(A)(5) (permitting officers to make a warrantless arrest based on probable cause to believe and individual has committed any public offense that makes the person removable); (FAC ¶¶ 186-87, 194-96; 198-200, 203-04, 207-08 (alleging injuries arising directly from the operation and enforcement of Sections 2 and 6)); *see also Ga. Latino Alliance for Human Rights v. Deal*, 793 F. Supp. 2d 1317, 1325 (N.D. Ga. 2011) (finding standing to challenge a similar state immigration law where, "unlike *Lyons*, the Court may assume that police officers will investigate the [p]laintiffs' immigration status each time there is probable cause to believe the [p]laintiffs have committed a crime").

Similarly, the Individual Plaintiffs need not "actually commit any criminal offense to trigger an immigration investigation" under Sections 2 and 6. *See Deal*, 793 F. Supp. 2d at 1325; A.R.S. § 11-1051(B) (requiring immigration inquiry where officers have reasonable suspicion to believe that the individual is unlawfully present in the United States during any lawful stop, detention, or arrest); A.R.S. § 13-3883(A)(5) (permitting warrantless arrest based only on probable cause to believe that a person has committed a crime that makes the person removable). Because Section 2 applies during every lawful stop, detention, or arrest, the

- 8 -

1 Individual Plaintiffs will be subject to the allegedly unconstitutional immigration
2 investigations even if they are stopped only for suspicion of a minor traffic violation and
3 even if they have not actually committed any crime. *See* A.R.S. § 11-1051; *see also O'Shea*,
4 414 U.S. at 497 (finding no standing to seek injunctive relief where the plaintiffs' prospective
5 injuries would occur only following arrest or conviction). Because Section 6 applies
6 whenever officers have probable cause to believe that an individual "has committed any
7 public offense that makes the person removable," arrest or detention under Section 6 does
8 not require any future misconduct. *See* A.R.S. § 13-3883(A)(5); *Deal*, 793 F. Supp. 2d at
9 1325 (finding standing where state immigration law permitted officers to conduct an
10 allegedly unlawful immigration inquiry every time there was probable cause to believe the
11 plaintiffs had committed a crime).

12 In addition, Individual Plaintiffs Pedro Espinoza, Jim Shee, Maura Castillo, and Maria
13 Morales have alleged that they have been approached or stopped by law enforcement in the
14 past while engaging in regular daily activities, including driving a car and riding a bicycle
15 on a roadway, and that in some cases this contact with law enforcement resulted without any
16 violation of the law. (*See* FAC ¶¶ 21, 24, 26-27.) Under S.B. 1070 and the allegations of the
17 FAC, these Individual Plaintiffs cannot avoid contact with law enforcement officers by
18 conforming their conduct to the law, and these Individual Plaintiffs have alleged a "realistic
19 danger of sustaining a direct injury as a result of . . . [the] operation or enforcement" of
20 Sections 2 and 6. *See Babbitt*, 442 U.S. at 298; *see also Deal*, 793 F. Supp. 2d at 1325; (FAC
21 ¶¶ 22, 24-29).

### b. Personal Stigmatic Injury

23 Courts have also recognized for purposes of equal protection claims that
24 "discrimination itself, . . . by stigmatizing members of the disfavored group[,] . . . can cause
25 serious non-economic injuries to those persons who are personally denied equal treatment
26 solely because of their membership in a disfavored group." *Heckler v. Mathews*, 465 U.S.
27 728, 739-40 (1984). A stigmatic injury caused by racial discrimination supports standing if
28 the plaintiffs are personally likely to be subject to the challenged discrimination. *Allen*, 468

1  U.S. at 755-56; *see also Barnes-Wallace v. City of San Diego*, 530 F.3d 776, 785-86, 786 n.5
2  (9th Cir. 2008). Plaintiffs assert a claim for violation of the equal protection clause, alleging
3  that S.B. 1070 "targets Plaintiffs who are racial and national origin minorities . . .
4  subject[ing] them to stops, detentions, questioning, and arrests because of their race and/or
5  national origin." (FAC ¶¶ 186-87.) Here, the Individual Plaintiffs, alleging that they are more
6  likely to be stopped, detained, or arrested as a result of their appearance or language ability,
7  have alleged that they are "personally [likely to be] denied equal treatment." *See Allen*, 468
8  U.S. at 755-56; *see also Barnes-Wallace*, 530 F.3d at 785-86, 786 n.5; *Darensburg v. Metro.*
9  *Transp. Comm'n*, No. C-05-01597 EDL, 2006 WL 167657, at *4-6 (N.D. Cal. Jan. 20, 2006)
10 (finding that plaintiffs alleging a stigmatic injury as a result of allegedly discriminatory
11 implementation and funding of transportation system had standing to challenge funding
12 decisions.) As a result, these Plaintiffs also have standing to raise an equal protection claim
13 based on the alleged stigmatic injury.

14                    **c.     Arizona's Arguments Regarding Prior Orders**

15 Arizona argues that "[t]he Court already held that the Individual Plaintiffs' allegations
16 regarding their ethnicity and limited English-speaking ability are insufficient to establish
17 their standing." (Ariz.'s Mot. at 6 (citing MTD Order at 11, 21).) In the prior MTD Order,
18 the Court reviewed allegations that Plaintiffs were afraid to speak a foreign language or
19 accented English around law enforcement officers and that this fear resulted in a chilling of
20 the individuals' First Amendment rights. (Order at 11, 21.) The Court determined that
21 because "S.B. 1070 does not purport to limit the rights of individuals to speak," the plaintiffs
22 alleged only a subjective chill insufficient to give rise to an injury in fact for purposes of
23 raising a First Amendment challenge to S.B. 1070. (*Id.* at 11.) Here, the Individual Plaintiffs
24 allege an injury resulting from the application and enforcement of the challenged portions
25 of S.B. 1070, not from a fear of speaking. (FAC ¶¶ 22, 24-28, 183-88, 192-208.) The injury
26 alleged here is not only a subjective chilling of rights.

27 Arizona also argues that the Court previously rejected standing based on appearance
28 and language ability in two related actions challenging S.B. 1070. (Doc. 597, Intervenor

Defs.' Reply in Supp. of Ariz.'s Mot. ("Reply") at 2-3 (citing *Frisancho v. Brewer*, CV 10-926-PHX-SRB, Doc. 65, Order Granting Mot. to Dismiss ("*Frisancho* Order") at 5; *Nat'l Coal. of Latino Clergy & Christian Leaders v. Arizona (NCLC)*, CV 10-943-PHX-SRB, Doc. 43, Order Granting Mot. to Dismiss ("*NCLC* Order") at 8).) Both the *Frisancho* Order and the *NCLC* Order are factually and legally distinguishable. In *Frisancho*, the plaintiff was a resident of the District of Columbia and alleged only that he intended to visit Arizona, where he might be stopped, detained, or arrested pursuant to S.B. 1070. (*See Frisancho* Order at 3.) The Court concluded that the "[p]laintiff's allegations that he intends to travel to Arizona, plans to not carry identification unless operating a motor vehicle, and plans to not answer questions regarding his immigration status, if asked, [did] not rise to the level of concrete, particularized, actual, imminent injury" because the plans articulated were "not concrete enough to create a realistic threat of imminent prosecution under S.B. 1070." (*Id.* at 5.) Unlike in *Frisancho*, the Individual Plaintiffs live in Arizona and have alleged facts making it realistic that they will face investigation pursuant to S.B. 1070. In *NCLC*, many of the plaintiffs' allegations relied on a speculative fear of future police misconduct and racial profiling. (*See NCLC* Order at 8.) In addition, plaintiffs in *NCLC* did not assert a stigmatic injury based on the denial of equal treatment. Here, the Individual Plaintiffs' alleged injuries are not dependent on any police misconduct, several of the Individual Plaintiffs allege that they have had contact with law enforcement in the past, and the Individual Plaintiffs assert a stigmatic injury based on their appearance and language ability. (*See* FAC ¶¶ 21, 24, 26-27, 186-87, 207-08.)

### d.     Conclusion

Individual Plaintiffs C.M., Jim Shee, Jose Angel Vargas, Maura Castillo, Maria Morales, John Doe # 1, and Jane Doe # 3 have alleged a "realistic danger of sustaining a direct injury as a result of . . . [the] operation or enforcement" of Sections 2 and 6 because of their appearance and limited English-speaking ability. *See Babbitt*, 442 U.S. at 298. Under S.B. 1070, "no attenuated series of events is required to provoke the allegedly unconstitutional conduct," and a realistic threat of injury exists. *See Deal*, 793 F. Supp. 2d

- 11 -

at 1326. The alleged injuries are fairly traceable to the operation and enforcement of S.B. 1070 and would be redressed by the injunction sought by Plaintiffs. *See Lujan*, 504 U.S. at 560-61. For these reasons, Individual Plaintiffs C.M., Jim Shee, Jose Angel Vargas, Maura Castillo, Maria Morales, John Doe # 1, and Jane Doe # 3 have standing to challenge Sections 2 and 6 of S.B. 1070 and Arizona's Motion to dismiss for lack of standing is denied.

### ii. Injury from Investigation for Insufficient Immigration Documents

S.B. 1070 Section 3 provides that "a person is guilty of willful failure to complete or carry an alien registration document if the person is in violation of [8 U.S.C. §§] 1304(e) or 1306(a)," federal statutes that require aliens to carry documentation of registration and penalize the willful failure to register. A.R.S. § 13-1509(A). Arizona argues that Individual Plaintiffs Pedro Espinoza and Jane Doe # 3 have not alleged that they are or will be in violation of Section 3 of S.B. 1070 and that as a result they cannot allege a credible threat of enforcement under Section 3. (Ariz.'s Mot. at 12.) Plaintiffs argue that they will be subject to prolonged investigation and detention as a result of their inability to produce immigration documents and demonstrate compliance with Section 3. (Resp. at 13.)

Individual Plaintiffs Pedro Espinoza and Jane Doe # 3 allege that they do not have immigration documents demonstrating their compliance with Section 3. (FAC ¶ 21 (alleging that Mr. Espinoza does not have an identification or registration document that local law enforcement would recognize); *id.* ¶ 29 (alleging that Jane Doe # 3 has filed an application for a U-Visa but does not have a recognizable registration document).) As discussed above, Jane Doe # 3 has alleged sufficient facts to demonstrate a substantial risk that she will be subject to investigation based on her appearance and limited English-speaking ability. *See supra* Part II.A.2.i; (*see also* FAC ¶ 29). In addition, Mr. Espinoza's allegations of past contact with law enforcement and subsequent detention also demonstrate a realistic danger that Mr. Espinoza will be stopped by law enforcement officers and subjected to increased investigation or prolonged detention as a result of his inability to produce immigration documents. (*See* FAC ¶ 21.) It is realistic that both Mr. Espinoza and Jane Doe # 3 will be

subject to prolonged detention during an investigation pursuant to Section 3 of S.B. 1070 while law enforcement officers attempt to verify their immigration status and determine whether they are in violation of 8 U.S.C. §§ 1304(e) or 1306(a). Pedro Espinoza and Jane Doe # 3 have alleged a "realistic danger" of discriminatory, prolonged detention during an investigation pursuant to S.B. 1070's Section 3. *See Babbitt*, 442 U.S. at 298. This injury is fairly traceable to the operation and enforcement of S.B. 1070 and would be redressed by the injunction sought by Plaintiffs. *See Lujan*, 504 U.S. at 560-61. Pedro Espinoza and Jane Doe # 3 have standing to challenge Section 3. Therefore, Arizona's Motion to dismiss Individual Plaintiffs Pedro Espinoza and Jane Doe # 3 for lack of standing is denied.

### iii.   Injury Under the Employment and Day Laborer Provisions

S.B. 1070 Section 5 adds A.R.S. § 13-2928 to the Arizona Criminal Code and makes it unlawful for a person to enter a motor vehicle in order to be hired if the vehicle "is stopped on a street, roadway or highway . . . [and is] block[ing] or imped[ing] the normal movement of traffic." A.R.S. § 13-2928(B).[4] Arizona argues that Individual Plaintiff Jose Angel Vargas has not alleged an injury under A.R.S. § 13-2928 because the provision does "not apply to any conduct in which Mr. Vargas seeks to engage because Mr. Vargas is a lawful permanent resident of the United States and Mr. Vargas has not alleged any intent to solicit employment in a manner that blocks or impedes the normal movement of traffic." (Ariz.'s Mot. at 11.) Plaintiffs counter that Mr. Vargas will be deterred from soliciting work if S.B. 1070 goes into effect and that Mr. Vargas faces a credible threat of prosecution under A.R.S. § 13-2928(B) because of his desire to continue soliciting work in public places and the "high likelihood . . . that [his] solicitation of employment on sidewalks will be treated as blocking or impeding

---

[4] A.R.S. § 13-2928(A) also makes it unlawful for an occupant of a motor vehicle that is stopped on a street, roadway, or highway and is impeding traffic to attempt to hire a person for work at another location, and A.R.S. § 13-2928(C) provides that it is unlawful "for a person who is unlawfully present in the United States and who is an unauthorized alien to knowingly apply for work, solicit work in a public place or perform work as an employee or independent contractor in this state."

- 13 -

1 'normal' traffic flow." (Resp. at 14.) Plaintiffs challenge A.R.S. § 13-2928(B), arguing that it is an unconstitutional restriction of First Amendment rights. (FAC ¶ 191.)

In the First Amendment context, self-censorship is "a harm that can be realized even without an actual prosecution." *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 393 (1988). "[I]t is sufficient for standing purposes that the plaintiff intends to engage in a course of conduct arguably affected with a constitutional interest and that there is a credible threat that the challenged provision will be invoked against the plaintiff." *Ariz. Right to Life Political Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003) (quotation omitted).

Mr. Vargas alleges that he is a lawful permanent resident of the United States and that he has lawfully and peacefully solicited work on public street corners in the past. (FAC ¶ 25.) Mr. Vargas also alleges that he would like to continue soliciting work in public places but that he is worried that he will be detained by police pursuant to S.B. 1070. (*Id.*) Soliciting work in a public place is conduct arguably affected with a constitutional interest. *See Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 945 (9th Cir. 2011) (en banc) (finding that solicitation of employment in a public place constitutes protected expression under the First Amendment). Because Mr. Vargas alleges that he wants to continue soliciting work on public street corners, there is a "credible threat" that A.R.S. § 13-2928(B) will be invoked against Mr. Vargas. *See Bayless*, 320 F.3d at 1006; (FAC ¶ 25). While soliciting work does not violate A.R.S. § 13-2928(B) unless the activity also impedes traffic, Mr. Vargas alleges that he solicits work on public street corners, and it is realistic that such solicitation could be seen as impeding traffic. *See Bentley*, 2011 WL 5516953, at *31-32 (finding that a plaintiff had standing to challenge a similar provision prohibiting the solicitation of work in a public place while blocking the flow of traffic where the plaintiff alleged that he solicits work on public street corners). Mr. Vargas has alleged a "realistic danger of sustaining a direct injury as a result of the . . . operation or enforcement" of A.R.S. § 13-2928(B). *See Babbitt*, 442 U.S. at 298. This injury is fairly traceable to the operation and enforcement of A.R.S. § 13-2928(B) and would be redressed by the injunction sought by Plaintiffs. *See Lujan*, 504 U.S. at 560-61. Jose Angel Vargas has

1 standing to challenge A.R.S. § 13-2928(B). Arizona's Motion to dismiss Individual Plaintiff
2 Jose Angel Vargas for lack of standing is denied.

### iv. Injury Under the Harboring and Transporting Provision[5]

S.B. 1070 Section 5 also adds A.R.S. § 13-2929, which makes it "unlawful for a person who is in violation of a criminal offense" to transport, move, conceal, or harbor an alien, if the person knows or recklessly disregards the fact that the alien is unlawfully present in the United States. A.R.S. § 13-2929(A)(1)-(2). In addition, A.R.S. § 13-2929 makes it a state criminal offense to encourage or induce an unlawfully present alien to come to or live in Arizona. *Id.* § 13-2929(A)(3). Arizona argues that Individual Plaintiff Luz Santiago has not alleged a credible threat of harm under A.R.S. § 13-2929 and that she should be dismissed for lack of standing. (Ariz.'s Mot. at 9-10.) Plaintiffs argue that Ms. Santiago has alleged a legitimate fear that she will face criminal sanctions for continuing her work because she frequently provides transportation and shelter to members of her congregation who may not be authorized to remain in the United States. (Resp. at 15-16.) In the original Complaint, Plaintiffs asserted that A.R.S. § 13-2929 was impermissibly vague and that its enforcement would violate the Due Process Clause. (Compl. ¶ 208.)

Here, Luz Santiago alleges that she is a pastor for a church and that eighty percent of the individuals in her congregation are not authorized to remain in the United States. (FAC

---

[5] Arizona argues that no Individual Plaintiff has standing to challenge A.R.S. § 13-2929 because "Plaintiffs have failed to identify the alleged substantive basis of their challenge to A.R.S. § 13-2929." (Reply at 8.) The Court dismissed Plaintiffs' claim alleging that A.R.S. § 13-2929 was impermissibly vague and the supremacy clause challenge to A.R.S. § 13-2929 raised by the United States. (MTD Order at 25-26; *United States v. Arizona*, CV 10-1413-PHX-SRB, Doc. 133, Order at 15-17.) Standing is an inquiry into whether a plaintiff has demonstrated the "personal stake in the outcome" necessary to "assure that concrete adverseness which sharpens the presentation of issues" required for the proper resolution of constitutional questions. *Baker*, 369 U.S. at 204. Standing does not depend on the merits of the underlying claim. *ASARCO*, 490 U.S. at 624. Further, while Plaintiffs' FAC no longer asserts a claim directly challenging A.R.S. § 13-2929, Plaintiffs explicitly note that they deleted these claims pursuant to the Court's Order and that they preserve their right to appeal. (*See* FAC ¶¶ 201-04; *id.* at 58.) The Court will consider the alleged injuries arising from A.R.S. § 13-2929.

¶ 23.) Ms. Santiago also alleges that she provides transportation, food, and shelter to members of her congregation on a daily basis. (*Id.*) Because Ms. Santiago alleges that the vast majority of her congregation is not authorized to remain in the United States, it is realistic and likely that Ms. Santiago's daily activities involve transporting and harboring unlawfully present aliens. It is also realistic that Ms. Santiago would be found to be conducting these activities in reckless disregard of the fact that the individuals are unlawfully present in the United States, given the fact that she believes that the vast majority of the individuals in her congregation lack authorization to remain in the United States. *See Bentley*, 2011 WL 5516953, at *42 (finding under a similar transporting and harboring provision that plaintiffs had standing where they alleged that in the course of their work they housed individuals that they believed were not lawfully present). A.R.S. § 13-2929 prohibits transporting and harboring unlawfully present aliens only while also violating another criminal offense; however, this additional requirement does not make enforcement of A.R.S. § 13-2929 unrealistic. While it is not clear what type of criminal violation will trigger A.R.S. § 13-2929, it is possible that traffic violations or the violation of the federal alien smuggling statute could be sufficient to give rise to a violation of § 13-2929. Because traffic violations are common and violation of the federal alien smuggling statute would not necessarily involve additional criminal conduct, this additional requirement does not make the threat of injury speculative or unlikely. Ms. Santiago's allegations are sufficient to demonstrate a reasonable likelihood that A.R.S. § 13-2929 could be enforced against her and that her conduct would violate the challenged provision. *See San Diego Cnty. Gun Rights*, 98 F.3d at 1126-27. The Court concludes that Ms. Santiago has alleged a "realistic danger of sustaining a direct injury as a result of the . . . operation or enforcement" of A.R.S. § 13-2929. *See Babbitt*, 442 U.S. at 298. This injury is fairly traceable to the operation and enforcement of A.R.S. § 13-2929 and would be redressed by the injunction sought by Plaintiffs. *See Lujan*, 504 U.S. at 560-61. Ms. Santiago has standing to challenge A.R.S. § 13-2929. Arizona's Motion to dismiss Individual Plaintiff Luz Santiago for lack of standing is denied.

### B. Motion to Strike the Class Action Allegations

Under Federal Rule of Civil Procedure 12(f), courts have the discretion to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[T]he function of a [Rule] 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (quotation omitted), *rev'd on other grounds*, 510 U.S. 517 (1994); *see also Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010). "Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc.*, 984 F.2d at 1527 (quotation omitted). "Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Id.* (quotation omitted). Courts view motions to strike disfavorably "because they are often used to delay and because of the limited importance of the pleadings in federal practice." *Brewer v. Indymac Bank*, 609 F. Supp. 2d 1104, 1113 (E.D. Cal. 2009). When reviewing a motion to strike, the Court takes the plaintiff's allegations as true and liberally construes the allegations in the pleading in the light most favorable to the plaintiff. *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1146 (N.D. Cal. 2010). "A motion to strike should not be granted unless it is absolutely clear that the matter to be stricken could have no possible bearing on the litigation." *Brewer*, 609 F. Supp. 2d at 1113; *see also In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 614 (N.D. Cal. 2007).

#### 1. Standing of the Individual Plaintiffs

Arizona argues that the class allegations should be struck because the Individual Plaintiffs have failed to allege a credible threat of harm under the provisions of S.B. 1070 and the Individual Plaintiffs therefore lack standing to represent the proposed classes. (Ariz.'s Mot. at 13-15.) As determined above, the Individual Plaintiffs have standing. *See supra* Part II.A.2. Because the basis of Arizona's Motion fails, Arizona's request that the Court strike the class allegations on this basis is denied. While the FAC contains five proposed classes, Plaintiffs seek to certify only the following three classes:

> (a) All persons who as a result of their race or national origin are or will be subject to stop, detention, arrest, or questioning about their immigration or nationality status or required to produce documentation of that status, pursuant to a provision of [S.B.] 1070 ("Class A");
> (b) All persons who are or will be deterred from soliciting work in a public forum and/or performing work as an employee or independent contractor by § 5 of [S.B.] 1070 ("Class B"); and
> (c) All persons who are or will be deterred from living, associating, worshiping, or traveling with immigrants in Arizona because of a provision of [S.B.] 1070 ("Class C").

(Doc. 563, Pls.' Mot. For Class Certification at 1.) Individual Plaintiffs C.M., Jim Shee, Jose Angel Vargas, Maura Castillo, Maria Morales, John Doe # 1, and Jane Doe # 3 have standing to represent Class A. Individual Plaintiff Jose Angel Vargas has standing to represent individuals who will be deterred from soliciting work in a public forum in Class B. Finally, Individual Plaintiff Luz Santiago has standing to represent Class C. Arizona's motion to strike the allegations on this basis is denied.

### 2. Scope of the Proposed Classes

Arizona also argues that "none of the proposed classes is defined in such a way that each member would have standing" and that the Court should strike the class allegations as a result. (Ariz.'s Mot. at 14-16.) Plaintiffs do not respond to this argument, arguing only that each of the Individual Plaintiffs has standing. (*See* Resp. at 16-17.)

"'[N]o class may be certified that contains members lacking Article III standing.'" *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 594 (9th Cir. 2012) (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006)). Generally, courts consider the sufficiency of a proposed class definition in reviewing a motion for class certification. *In re Wal-Mart*, 505 F. Supp. 2d at 614. A defendant may move to strike class allegations prior to discovery "[w]here the complaint demonstrates that a class action cannot be maintained on the facts alleged." *See Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009) (concluding that a motion to strike class allegations was not premature where the class claims could not succeed under any circumstances because the proposed class definition clearly included individuals who would not have standing); *see also Tietsworth*, 720 F. Supp. 2d at 1146 ("Under Rules 23(c)(1)(A) and 23(d)(1)(D), as well as pursuant to Rule 12(f), this

1 | Court has authority to strike class allegations prior to discovery if the complaint demonstrates
2 | that a class action cannot be maintained.").

3 | However, motions to strike class allegations "are disfavored because a motion for
4 | class certification is a more appropriate vehicle" for arguments about the propriety of a class.
5 | *Thorpe v. Abbott Labs., Inc.*, 534 F. Supp. 2d 1120, 1125 (N.D. Cal. 2008); *In re Wal-Mart*,
6 | 505 F. Supp. 2d at 615 (noting that "dismissal of class allegations at the pleading stage
7 | should be done rarely and that the better course is to deny such a motion because the shape
8 | and form of a class action evolves only through the process of discovery" (quotation
9 | omitted)); *see also Covillo v. Specialtys Cafe*, No. C-11-00594 DMR, 2011 WL 6748514,
10 | at *7 (N.D. Cal. Dec. 22, 2011) (same). Even where a proposed class definition appears
11 | improper or overbroad, courts often find that motions to strike such allegations are premature
12 | and that the matter is better resolved at the class certification phase. *See In re Wal-Mart*, 505
13 | F. Supp. 2d at 615-16 (denying as premature a motion to dismiss or strike class allegations
14 | that were "somewhat suspicious" and perhaps improper); *see also Fradis v. Savebig.com*, No.
15 | CV 11-07275 GAF (JCx), 2011 WL 7637785, at *10 (C.D. Cal. Dec. 2, 2011) (denying a
16 | motion to strike class allegations for lack of standing and finding that "[a]lthough the class
17 | definition may need to be re-worked and some potential class members removed, the Court
18 | cannot say that it is facially apparent from the pleadings that there is no ascertainable class"
19 | (quotation omitted)); *Hibbs-Rines v. Seagate Tech., LLC.*, No. 08-5430, 2009 WL 513496,
20 | at *3 (N.D. Cal. Mar. 2, 2009) ("While plaintiff's class definitions may be insufficiently
21 | definite . . . , the [c]ourt finds that the motion to strike the class allegations is premature" and
22 | that "the propriety of the class allegations [should be determined] during the class
23 | certification process").

24 | Here, the proper limits of the proposed classes are more appropriately addressed at the
25 | class certification stage with the benefit of full briefing. *See In re Wal-Mart*, 505 F. Supp. 2d
26 | at 615; *Covillo*, 2011 WL 6748514, at *7; *Hibbs-Rines*, 2009 WL 513496, at *3. Arizona's
27 | Motion requesting that the Court strike the class allegations is denied.
28 |

## III. CONCLUSION

As discussed above, the Individual Plaintiffs have each alleged sufficient facts in support of their standing. In addition, the scope of the proposed classes is better addressed on a motion for class certification. *See In re Wal-Mart*, 505 F. Supp. 2d at 615. Therefore, Arizona's Motion to dismiss the Individual Plaintiffs for lack of standing and strike the class allegations is denied.

**IT IS THEREFORE ORDERED** denying Intervenor Defendants Governor Janice K. Brewer and the State of Arizona's Motion to Dismiss the Individual Plaintiffs and Strike Class Action Allegations (Doc. 562).

DATED this 29th day of May, 2012.

_____
Susan R. Bolton
United States District Judge