# Exhibit B

## DECLARATION OF ROBERT HALLIDAY

Robert Halliday declares as follows:

1.  The facts set forth below are of my own personal knowledge and, if called as a witness, I could and would testify competently thereto.

2.  I have been employed as a law enforcement officer since 1971. I began my career with the Flagstaff Police Department. In 1973, I joined the ranks of the Arizona Department of Public Safety ("DPS"). During my career at DPS, I carried out various assignments until my retirement from regular service in 2008. In 2010, I was appointed as DPS Director, a position I currently hold.

3.  As DPS Director, I set department policy and direct the efforts of 1,072 sworn DPS Officers throughout Arizona. Also, I am aware of the training DPS Officers receive both internally and through AzPOST.

4.  DPS Officers have taken an oath to uphold the United States Constitution and the State of Arizona Constitution. Furthermore, DPS Officers are thoroughly trained and have a working knowledge of the constitutional standards for reasonable suspicion and probable cause. In fact, DPS officers develop reasonable suspicion and probable cause daily as they serve to protect all persons living in or visiting Arizona.

5.  DPS Officers are thoroughly trained and understand that racial profiling and biased policing are constitutionally prohibited and not tolerated by DPS.

6.  I am aware that S.B. 1070 contains a provision, Section 2(B), that requires law enforcement officers to make a reasonable attempt to determine the immigration status of an individual when, in connection with a lawful stop, detention or arrest, that law enforcement officer develops reasonable suspicion that the person is not lawfully present in the United States as long as that inquiry is practicable and will not hinder or obstruct an investigation.

7. DPS Officers currently develop, and prior to S.B. 1070 developed, reasonable suspicion of unlawful presence on a daily basis. When a DPS Officer has reasonable suspicion that he or she is in contact with someone who is unlawfully present, DPS's current operating procedure is to contact ICE (formerly Border Patrol) for a determination of whether that person should be held for ICE or whether he or she should be released. However, DPS Officers are prohibited from detaining a person longer than permitted by the United States Constitution. The implementation of Section 2(B) of S.B. 1070 will not impact DPS operating procedures relating to a DPS Officer's reasonable suspicion that someone is unlawfully present and will not change a DPS Officer's ability to constitutionally develop reasonable suspicion.

8. DPS Officers have participated in the S.B. 1070 training administered by AzPOST and I am confident that DPS Officers are trained and prepared to enforce Section 2(B) of S.B. 1070 consistent with the United States and Arizona Constitutions.

9. Furthermore, I am confident that DPS officers are trained and prepared to enforce Section 2(B) in a professional manner consistent with the expectations of our Department and the persons DPS serves.

I declare under penalty of perjury that the foregoing is true and correct.

DATED August 9, 2012

Maricopa County, Arizona.

By _____
Robert Halliday