Exhibit C

## DECLARATION OF COCHISE COUNTY SHERIFF LARRY A. DEVER

I, Larry A. Dever, Cochise County Sheriff, pursuant to 28 U.S.C. 1746, in my official capacity, hereby subscribe and swear, as follows:

1.      I am the Sheriff of Cochise County, Arizona, the Chairman of the National Sheriff's Association Border Issues Subcommittee, a member of the Arizona Border Sheriff's Alliance and the Border States Sheriff's Association. I am serving my fourth elected term as Sheriff of Cochise County.

2.      I am a native of Cochise County and a 36-year Cochise County law enforcement veteran. Before being elected to my first term as Sheriff in 1996, I pursued a 20-year career working in the Cochise County Sheriff's Office. I entered the profession as a deputy in 1976, and rose through the ranks from sergeant to major before being elected Sheriff.

3.      Cochise County's entire southern border (nearly 84 miles) is shared with Mexico and the County has two active ports of entry in Douglas and Naco.  During my career, I have encountered illegal immigration and related issues, including human and drug smuggling, on a daily basis as Cochise County is an extremely popular smuggling corridor for travel to Tucson and Phoenix.

4.      As Sheriff of Cochise County, I am a defendant in the matter of Valle Del Sol, et. al. v. Michael B. Whiting et. al., CV-10-01061-PHX-SRP.

5.      I have had an opportunity to read the Plaintiffs' Motion for Preliminary Injunction and Memorandum of Points and Authorities in Support filed July 23, 2012.

6.      I also have reviewed the Declaration of Chief Robert Villasenor submitted in support of Plaintiffs' Motion.

7.      Within the Motion, the Plaintiffs cited a single quote from an interview I gave to Sean Hannity on June 25, 2012 to suggest that the Cochise County Sheriffs' Office "will extend detentions for immigration purposes." Plaintiffs' Motion at 7:14-22.

8.      The plaintiffs have cited my quote out of context.  A complete transcript of the interview is attached hereto as Exhibit "A."

9.      During the interview, I said, "Let me just tell you what we do, Sean. If ICE or Border Patrol won't come get them, we take them to them, dump them on their doorstep and say, you figure it out."

10.     Read in its entirety, it is clear that I was using some hyperbole in response to a question about the Federal Government's abdication of its responsibility to enforce, or at least not interfere with the enforcement of, Federal immigration law.

11.     During that interview I was emphasizing my concerns about Federal policies that have frustrated Federal and Arizona law enforcement efforts.  I was not making any statement, or rendering any opinions, about how, if at all, any individual's detention would be affected by the implementation of Section 2(B) of S.B. 1070.

12.     In fact, it is the policy of the Cochise County Sheriff's Office that, once S.B. 1070 is implemented, our deputies will not prolong any detentions solely to verify an individual's immigration status.

13.     Moreover, I do not believe that implementation of Section 2(B) of S.B. 1070 will have any material effect on the operations of the Cochise County Sheriff's Office, and will not result in prolonging any detentions.

14.     The Cochise County Sheriff's Office, for as long as I have been in law enforcement, frequently has turned persons over to the United States Border Patrol when a deputy has been confronted with reasonable suspicion that an individual may have criminally entered the United States.

15.     It has been my experience, until the last three years, INS (now ICE) and the Border Patrol have rewarded and embraced State and local law enforcement efforts to assist in the apprehension of illegal aliens.

16.     The Cochise County Sheriff's Office has not, does not, and will not racially profile.  Our office and its personnel have deep respect for every person's rights.  In the course of their training, all of our

deputies have received extensive instruction that has included information concerning the prohibition against racial profiling. Indeed, engaging in racial profiling or any conduct that violates the United States or Arizona Constitutions is expressly identified in our policies as impermissible conduct. Any employee, which includes my deputies, engaging in such conduct is subject to disciplinary action, including discharge, suspension, demotion or removal.

17.     I disagree with Chief Villasenor's declaration that law enforcement officers require special training or guidelines in order to correctly enforce Section 2(B) of S.B. 1070. Regardless, the general and specific training that my deputies have received, and continue to receive, including the training provided by AzPOST regarding S.B. 1070 issues and AzPOST training generally, sufficiently train my deputies to enforce a provision such as Section 2(B) of S.B. 1070, which merely codifies a practice that the Cochise County Sheriff's Office has been following for years.

18.     In my 37 years of law enforcement in Cochise County, we have received one complaint of racial profiling – submitted after the controversy surrounding S.B. 1070. That complaint was not sustained.

19.     Enforcement of Section 2(B) of S.B. 1070 will not prove to be any more difficult than enforcement of any other law.

20.     From the first day of training, a law enforcement officer is taught the parameters of "reasonable suspicion" and "probable cause."

21.     It is my experience that a law enforcement officer most often obtains a reasonable suspicion that a person is unlawfully present in the United States because that person simply tells the officer that they are not lawfully present.

22.     The Cochise County Sheriff's Office responds to all apparent criminal violations the same way and takes action consistent with the constraints of "reasonable suspicion" and "probable cause." To my knowledge S.B. 1070 is the only Arizona criminal law that specifically proscribes racial profiling.

23.    Many have claimed that S.B. 1070 will have a "chilling effect" on crime victims or witnesses. There simply is no evidence supporting that claim. In fact, the Federal government already has dispelled any "chill" by establishing special visas that provide immunity to victims and witnesses. Moreover, the language of S.B. 1070 itself acknowledges a law enforcement officer's discretion to bypass an immigration inquiry if impracticable or if the inquiry might hinder an investigation.

24.    Other critiques of S.B. 1070 are similarly misplaced. The Cochise County Sheriff's Office will not conduct an immigration inquiry on each and every person contacted by a Deputy. The Office will conduct reasonable S.B. 1070 inquiries only when the Deputy has reasonable suspicion that the person is an alien who is unlawfully present in the United States and when practicable, and only when such reasonable suspicion arises out of an otherwise lawful stop, detention or arrest of the individual.

25.    The Cochise County Sheriff's Office and its deputies intend to enforce Section 2(B) of S.B. 1070 consistent with the United States Supreme Court's recent ruling, the United States Constitution, AZPOST training as well as the policies and procedures of the Cochise County Sheriff's Office.

26.    Attached hereto as exhibits "B" "C" and "D" are true and correct copies of sections of the Cochise County Sheriff's Office Policy Manual concerning "Citation Releases" "Immigration Violations" and "Racial/Bias Based Profiling."

Dated this 10 day of August, 2012.

Larry A. Dever

# Exhibit C-A



Defending our Southern border - 05:20

*This is a rush transcript from "Hannity," June 25, 2012. This copy may not be in its final form and may be updated.*

(BEGIN VIDEO CLIP)

**GOV. JAN BREWER, R-ARIZ.:** Arizona did

**Sponsored Links**    Buy a link here

**LifeLock® Official Site**
Protect your Family's Identity. Get LifeLock...
LifeLock.com

**Arizona Birth Defect?**
Possible compensation if you took antidepressants while...
ADPHealthInsights.com

not ask for this fight nor did it seek out the task of having to confront illegal immigration. We cannot forget that we are here today because the federal government has failed the American people regarding immigration policy, has failed to protect its citizens, has failed to preserve the rule of law, and has failed to secure our borders.

(END VIDEO CLIP)

**SEAN HANNITY, HOST:** That was Gov. Jan Brewer earlier today reacting to the Supreme Court's Arizona immigration law ruling. Now, the court struck down much of the law but upheld a key provision that allows police officers to check the immigration status of those that they suspect may be in the country illegally.

And now, outrage is growing over reports that the Obama administration has suspended existing agreements with Arizona police. And according to an anonymous officials quoted by the Washington Times, the Department of Homeland Security will not ignore calls from local law enforcement who report illegals.

Joining me now with reaction to the ruling today, is Cochise County Sheriff Larry Dever and Robert Gilbert is with us, former Department of Homeland Security and border patrol official. Thank you both gentleman for being with us.

Sheriff, let me I guess start with you and ask you, you know, what does this mean if the Department of Homeland Security, if you guys do your job and this has now been upheld by the court, and you seek information from the government and they aren't going to cooperate, what does that mean? Ostensibly, in reality doesn't that mean you have to release the people that they are talking about?

**SHERIFF LARRY DEVER, COCHISE COUNTY, ARIZ.:** Well, Sean, four things have happened over this brief period of time. Fast and Furious, which is a huge travesty, then you have the Obama administration announcing they are no longer going to deport a certain category of illegal aliens that they haven't been deporting anyway. That's the joke on you and the American public. Then the Supreme Court ruling where they are claiming that the Arizona law was gutted.

The cornerstone as you said earlier was left in place, it's the most important part. And then today, suspending and pulling away the 287-G agreement and then stating that they are not going to respond to lawful requests, requests that they are required to respond to under the law, is not just a slap in the face to the American public and the law enforcement in general, specifically in Arizona, but the Supreme Court as well.

**HANNITY:** Mr. Gilbert. Let me go through this. Governor Brewer was very clear here. The only reason this came about is because the federal government failed the people of Arizona and failed the people of this country, and especially people in border states. It's impacting our criminal justice system, our educational system, our healthcare system, and you are on the front lines of all of this.

Now as a result of this, the president's executive order, he's not going to enforce the law, and now he's saying our federal agencies are not going to cooperate with local law enforcement. In all practical terms, what does that mean?

Connect with Hannity  |  Like  863k    Follow @SeanHannity  406K followers

Case 2:10-cv-01061-SRB Document 731-4 Filed 08/10/12 Page 8 of 20

**ROBERT GILBERT, FORMER BORDER PATROL OFFICIAL:** Well, Sean, it looks like a huge opportunity being missed here. If you look for the first time in history the law enforcement community, whether its federal, state, local or tribal, was going to be able to coordinate and actually work together in a cohesive manner to work towards securing the border. Because border security started in Arizona but it impacts the entire United States. And if we don't secure the border here, we're going to continue to have that trickle through that's going on in other states. And the law enforcement community, the public expects us to work together. We work together in everything except this one issue.

**HANNITY:** All right.

**GILBERT:** And why is that?

**HANNITY:** Sheriff, let me go back to October of 2010. And this is President Obama talking about how Hispanic Americans were being harassed under the Arizona immigration law. And I want to ask you if this is true or not. Here's what the president said.

(BEGIN VIDEO CLIP, OTTUMWA, IOWA, APRIL 27, 2010)

**PRESIDENT BARACK OBAMA:** If you are a Hispanic American in Arizona, your great-grandparents may have been there before Arizona was even a state. But now suddenly if you don't have your papers and you took your kid out to get ice cream, you are going to be harassed. That's something that could potentially happen. That's not the right way to go.

(END VIDEO CLIP)

**HANNITY:** Now, the president totally misrepresented the law. Because law enforcement was not allowed under the law to ask people for, quote, "their papers." They would have had to have had some contact with law enforcement ahead of time. What do you make of what the president said and is any of that what he said true?

**DEVER:** Well, Sean, that's just an absolute insult to the professionalism of the men and women that work in this industry day in and day out. Thirty six years, I've been in law enforcement and Cochise County. We had one racial profiling complaint in that period of time and it was unfounded. To suggest for a second that this law would change that culture in law enforcement for a second is, again, just a huge insult.

**HANNITY:** What about this Justice Department hotline that has been set up for Arizona immigration enforcement concerns? What does that mean for you and those that work in your agency?

**DEVER:** Well, that's expected. You know, the ACLU lawsuit is still sitting in district court in Arizona and that was the first lawsuit filed. That has yet to be heard. And that's where they sued each sheriff, myself and every other sheriff in Arizona and county attorney individually to enjoin us from enforcing the law should the Supreme Court rule as it did today.

**HANNITY:** All right.

**DEVER:** So, we are going to be back here and going through this all over again. And they are -- they have lined up and they are waiting for the right case to come along to try to bring us back. So, the battle is still to be waged, and that's why we started this border sheriff's project some time ago and you can go to bordersheriffs.com and get the info, but in order to -- because we anticipated that this battle would be waged beyond the Supreme Court's ruling.

**HANNITY:** I'm not so sure if the president decides that he's not going to enforce the laws that have been passed by Congress and ruled by executive fiat. And then they are not going to cooperate with law enforcement if any of that matters unless you get a new president. But gentlemen, thank you both for being with us.

**DEVER:** Let me just tell you what we do, Sean. If ICE or Border Patrol won't come get them, we take them to them, dump them on their doorstep and say, you figure it out.

**HANNITY:** All right. We'll going to watch very closely. I think there's a lot of challenges that comes to this. I appreciate you being here.

Connect with Hannity | Like | 863k     Follow @SeanHannity · 406K followers                    ×

Content and Programming Copyright 2012 Fox News Network, LLC. ALL RIGHTS RESERVED. Copyright 2012 CQ-Roll Call, Inc. All materials herein are protected by United States copyright law and may not be reproduced, distributed, transmitted, displayed, published or broadcast without the prior written permission of CQ-Roll Call. You may not alter or remove any trademark, copyright or other notice from copies of the content.

Print    Email    Share    Recommend    10    Tweet <3

Sponsored Links                                                                Buy a link here

LifeLock® Official Site
Identity Theft Can Happen to Anyone So Get Protection with LifeLock.
LifeLock.com

Arizona Birth Defect?
Possible compensation if you took antidepressants while pregnant...
ADPHealthInsights.com

Woman is 57 But Looks 27
Phoenix Mom publishes simple facelift trick that angered doctors...
ConsumerLifestyles.org

Transcripts

Latest Transcript
**August 09, 2012**
**Guests:** Sarah Palin

Please click on a date for previous transcripts:

**August 2012**

| | 30 | 31 | 1 | 2 | 3 | 4 | 5 |
|---|---|---|---|---|---|---|---|
| ‹ | 6 | 7 | 8 | 9 | 10 | 11 | 12 | › |
| | 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| | 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| | 27 | 28 | 29 | 30 | 31 | 1 | 2 |



ADVERTISEMENT

Sponsored Links                                    Buy a link here

LifeLock® Official Site
Protect your Family's Identity. Get LifeLock Ultimate™.
LifeLock.com

Arizona Birth Defect?
Possible compensation if you took antidepressants while
pregnant...
ADPHealthInsights.com

Friday on 'Hannity'



Candid, controversial and completely unleashed! It's one hour of pure Sean!

Monday's Great American Panel

Joe Trippi



Joe Trippi is a Democratic political strategist

Ron DeSantis

Connect with Hannity    |    Like  863k    Follow @SeanHannity  406K followers                                    ✕

# Exhibit C-B

# Cochise County Sheriff's Office
Policy Manual

# Citation Releases

## 420.1 PURPOSE AND SCOPE

Arizona law permits law enforcement agencies to use citation release procedures in lieu of arrest for misdemeanor or petty offenses with certain exceptions (ARS § 13-3903(B)).

## 420.2 STATUTORY REQUIREMENTS

Release by citation for misdemeanor or petty offenses can be accomplished by issuing a notice to appear from a citation book or an electronic device (ARS § 13-3903(A)).

### 420.2.1 DISCRETION TO ARREST

While this office recognizes the statutory power of peace officers to make arrests throughout the state, deputies are encouraged to use sound discretion in the enforcement of the law. On-duty arrests will not generally be made outside the jurisdiction of this office, except in cases of hot or fresh pursuit, while following up on crimes committed within the County, when acting under a joint powers agreement or mutual aid agreement, or while assisting another agency. On-duty deputies who discover criminal activity outside the jurisdiction of the County should, when circumstances reasonably permit, consider contacting the agency having primary jurisdiction before attempting an arrest. Off-duty deputies observing criminal activity should generally take enforcement action only when it reasonably appears that imminent risk to life or property exists and the reasonable opportunity does not exist to contact the law enforcement agency with primary jurisdiction. In such situations, the involved deputy shall clearly identify him/herself as a sheriff's deputy. Deputies are authorized to use verbal or written warnings in lieu of arrest or citation to resolve minor traffic and criminal violations when appropriate.

## 420.3 OFFICE PROCEDURE

The following procedure will be followed to comply with Arizona law. Any release pursuant to ARS 13-3903 does not affect a deputy's authority to conduct a lawful search incident to arrest even though the arrested person is released before being taken to a station, booking facility or magistrate (ARS § 13-3903(G)).

### 420.3.1 FIELD CITATIONS

In most misdemeanor cases an arrestee 18 years or older may be released on citation provided the individual can be satisfactorily identified, there is no outstanding arrest warrant for the individual and none of the below described disqualifying circumstances are present.

### 420.3.2 JAIL RELEASE

In certain cases, it may be impracticable to release a person arrested for misdemeanor offenses in the field. The person arrested may instead be released after booking at the jail, with Patrol Lieutenant approval. For offenses listed in ARS § 41-1750(C), the person shall not be released until proof of proper identification and a right index fingerprint is obtained. If a 10-print fingerprint card is not completed, the person shall be provided with a mandatory fingerprint compliance form with appropriate information and instructions (ARS § 13-3903(C)). Any person arrested for a misdemeanor offense shall be released on his/her written promise to appear after the booking procedure is completed, unless the person disqualified for other reasons (ARS § 13-3903(D)(3)).

# Cochise County Sheriff's Office
Policy Manual
*Citation Releases*

## 420.3.3 DISQUALIFYING CIRCUMSTANCES

A person arrested for a misdemeanor or petty offense may be released on a notice to appear unless one of the following situations is present (ARS § 13-3903):

> (a) There is a reasonable likelihood that the offense or offenses would continue or resume, or that the safety of persons or property would be imminently endangered by the release of the person arrested.
> (b) There is reason to believe that the person would not appear at the time and place specified in the notice to appear. The basis for this determination shall be specifically stated.
> (c) When the person is arrested for a domestic violence offense (ARS § 13-3601B); violation of an order of protection against domestic violence (ARS § 13-3602); disobeying or resisting an injunction prohibiting harassment (ARS § 12-1809) or workplace harassment (ARS § 12-1810); or disobeying or resisting a preliminary injunction or temporary order relative to dissolution of marriage, legal separation, annulment (ARS § 25-315).

When a person is arrested on a misdemeanor offense and is not released by criminal citation, the reason for non-release should be noted on the booking form and submitted to the Patrol Lieutenant for approval and inclusion with the case file in the Records Center.

## 420.3.4 OTHER REASONS FOR NON-RELEASE

If the person arrested is not released for one or more of the reasons specified in this policy, the Patrol Lieutenant should state on the booking form the reason for non-release. Such reasons for non-release may include:

> (a) Previous failure to appear is on record.
> (b) The person lacks ties to the area, such as a residence, job or family.
> (c) Unusual circumstances lead the deputy responsible for the release of prisoners to conclude that the suspect should be held for further investigation.

## 420.4 JUVENILE CITATIONS

Completion of citations for juveniles is generally only appropriate for misdemeanor traffic violations and local misdemeanor ordinance violations. All misdemeanor violations for juveniles shall be documented with a case number. Cases not closed by citation should be referred to the Juvenile Probation Department, if necessary, for diversion or prosecution.

## 420.5 REQUESTING CASE NUMBERS

Many cases involving a criminal citation release can be handled without requesting a case number. Traffic situations and local code violations can be documented on the reverse side of the records copy of the citation. However, most state statute sections will require a case number to document the incident properly in a report. The deputy should also request a case number for all criminal offenses, excluding civil traffic violations.

# Exhibit C-C

Cochise County Sheriff's Office
Policy Manual

# Immigration Violations

## 428.1 PURPOSE AND SCOPE

The purpose of this policy is to provide guidelines to employees of the Cochise County Sheriff's Office for reporting, investigating and enforcing immigration laws.

## 428.2 POLICY

It is incumbent upon all employees of this office to make a personal and professional commitment to equal enforcement of the law and equal service to the public. Confidence in this commitment will increase the effectiveness of the Office in protecting and serving the entire community and recognizing the dignity of all persons, regardless of their immigration status.

### 428.2.1 DETENTIONS

A detention occurs when a deputy intentionally, through words, actions or physical force causes a reasonable individual to believe he/she is being required to restrict his/her movement. Detentions also occur when a deputy actually restrains a person's freedom of movement.

### 428.2.2 CONSENSUAL CONTACTS

A consensual contact occurs when a deputy contacts an individual but does not create a detention through words, actions or other means. In other words, a reasonable individual would believe that his/her contact with the deputy is voluntary. Consensual contacts with consenting individuals are encouraged by the Cochise County Sheriff's Office to strengthen community involvement, community awareness and problem identification. Deputies should be consistent about when they ask such consenting individuals for identification in order to avoid the perception of disparate treatment based on race, color or national origin.

### 428.2.3 VICTIMS AND WITNESSES

To encourage crime reporting and cooperation in the investigation of criminal activity, all individuals, regardless of their immigration status, must feel secure that contacting or being addressed by members of law enforcement will not automatically lead to immigration inquiry or deportation. While it may often be necessary to determine the identity of a victim or witness, employees shall treat all individuals equally and without regard to race, color or national origin in any way that would violate the United States or Arizona Constitutions.

## 428.3 ENFORCEMENT

Deputies may detain an individual when there are facts supporting a reasonable suspicion that the individual entered into the United States in violation of a federal criminal law. Federal authorities shall be notified as soon as possible and the detained individual shall be immediately released if the federal authorities do not want the individual held. Deputies should not detain for any length of time any individual for a civil violation of federal immigration laws.

# Cochise County Sheriff's Office
Policy Manual
*Immigration Violations*

## 428.3.1 FEDERAL CIVIL VERSUS CRIMINAL OFFENSES

An individual who enters into the United States illegally has committed a misdemeanor (8 USC § 1325(a)). Generally, an alien who initially made a legal entry into the United States but remains beyond what is a legal period of time has committed a civil offense. Reasonable suspicion that a criminal immigration violation has occurred shall not be based on race, color, national origin or any other generalization that would cast suspicion on or stigmatize law-abiding citizens, except to the extent permitted by the United States or Arizona Constitution. Instead, the totality of circumstances shall be used to determine reasonable suspicion and include factors weighing for and against reasonable suspicion. Factors that may be considered in determining reasonable suspicion that a criminal violation has occurred may include, but are not limited to:

(a) An admission or confession that the person is unlawfully present in the United States.
(b) Reason to suspect that the person possesses immigration documentation that is forged, altered or otherwise indicative that the person is not legally present in the United States.
(c) While a lack of English proficiency may be considered, it should not be the sole factor in establishing reasonable suspicion. When practicable, reasonable effort should be made to accommodate persons with limited English proficiency.
(d) Proximity to a United States border or known routes used for illegal entry into the United States.
(e) Other factors based upon training and experience, particularly those identified by Arizona Peace Officer Standards and Training (POST) material.

## 428.3.2 IMMIGRATION CHECKS

Immigration status may be determined through any of the following sources:

(a) A law enforcement officer who is authorized by the federal government under the Immigration and Nationality Act § 287(g) to verify or ascertain an alien's immigration status (287(g) certified officer)
(b) Immigration and Customs Enforcement (ICE)
(c) U.S. Customs and Border Protection (CBP)

The deputy shall verify from a 287(g) certified officer, ICE or CBP whether the person's presence in the United States relates to a federal civil violation or a criminal violation. If the deputy has facts that establish probable cause to believe that the detained person has committed a criminal immigration offense, the deputy may continue the detention and may request ICE or CBP to respond to the location to take custody of the detained person. In addition, deputies should notify a supervisor as soon as practicable. Deputies are encouraged to forgo detentions made solely on the basis of a misdemeanor criminal federal immigration offense when time limitations, availability of personnel, issues of officer safety, communication capabilities or the potential to obstruct a separate investigation outweigh the need for the detention.

## 428.3.3 SUPERVISOR RESPONSIBILITIES

When notified that a deputy has detained a person and established probable cause to believe the person has committed a criminal immigration offense, the supervisor should:

# Cochise County Sheriff's Office
Policy Manual
*Immigration Violations*

(a) Confirm that the detained person's immigration status was properly verified.
(b) Ensure that the detained person is taken into custody when appropriate and that no steps are taken that would limit or restrict the enforcement of federal immigration laws to less than the full extent permitted by federal law (ARS § 11-1051 A). Appropriate steps may include, but are not limited to:
    1. Transfer to federal authorities.
    2. Lawful arrest for a criminal offense or warrant.

## 428.4 ARREST NOTIFICATION TO IMMIGRATION AND CUSTOMS ENFORCEMENT

Generally, deputies will not need to notify ICE when booking arrestees at the county jail. Immigration officials routinely interview suspected undocumented aliens who are booked into the county jail on criminal charges. Notification will be handled according to jail operation procedures.

### 428.4.1 INFORMATION SHARING

Unless otherwise dictated by law, it is the policy of the Cochise County Sheriff's Office that:

(a) No employee will prohibit, or in any way restrict, any other employee from doing any of the following regarding the citizenship or immigration status, lawful or unlawful, of any individual (8 USC § 1373):
    1. Sending information to, or requesting or receiving such information from, ICE
    2. Maintaining such information in department records
    3. Exchanging such information with any other federal, state or local government Entity
(b) Employees will not limit or restrict the enforcement of federal immigration laws to less than the full extent permitted by federal law (ARS § 11-1051).

## 428.5 STATE IMMIGRATION-RELATED ARRESTS AND IMPOUNDS

Supervisor notification is required prior to any arrest or vehicle impound related to or based upon a person's immigration status.

## 428.6 U-VISA/T-VISA NONIMMIGRANT STATUS

Under certain circumstances, federal law allows temporary immigration benefits to victims and witnesses of certain qualifying crimes (8 USC § 1101(a)(15)(U and T)). A declaration/certification for a U-Visa/T-Visa from the U.S. Citizenship and Immigration Services may be completed on the appropriate U.S. DHS Form supplements (I-918 or I-914) by law enforcement and must include information on how the individual can assist in a criminal investigation or prosecution in order for a U-Visa/T-Visa to be issued. Any request for assistance in applying for U-Visa/T-Visa status should be forwarded in a timely manner to the Investigation Unit Sergeant assigned to supervise the handling of any related case. The Investigation Unit Sergeant should:

(a) Consult with the assigned detective to determine the current status of any related case and whether further documentation is warranted.
(b) Review the instructions for completing the declaration/certification if necessary.
Instructions for completing Forms I-918/I-914 can be found on the U.S. DHS website.

# Cochise County Sheriff's Office
Policy Manual
*Immigration Violations*

(c) Contact the appropriate prosecutor assigned to the case, if applicable, to ensure the declaration/certification has not already been completed and whether a declaration/certification is warranted.

(d) Address the request and complete the declaration/certification, if appropriate, in a timely manner.

(e) Ensure that any decision to complete or not complete the form is documented in the case file and forwarded to the appropriate prosecutor. Include a copy of any completed certification in the case file.

## 428.7 TRAINING

The Administrative Sergeant shall ensure that all applicable employees receive appropriate immigration training supplied by Arizona POST.

## 428.8 ICE REQUEST FOR ASSISTANCE

A specific request for assistance from ICE or any other federal agency should be directed to a supervisor. This office may provide available support services, such as traffic control or peacekeeping efforts, to ICE or other federal agencies.

# Exhibit C-D

## Cochise County Sheriff's Office
Policy Manual

# Racial/Bias Based Profiling

**402.1 PURPOSE AND SCOPE**

The Cochise County Sheriff's Office strives to provide law enforcement to our community with due regard to the racial, cultural or other inherent differences of those we serve. It shall therefore be the policy and practice of this office to provide law enforcement services and to enforce the law equally and fairly without discrimination toward any individual or group. Race, ethnicity or nationality, religion, gender, sexual orientation, economic status, age, cultural group, disability, or affiliation with any other similar identifiable group shall not be utilized as the basis for providing differing levels of law enforcement service or the enforcement of the law.

**402.2 DEFINITIONS**

Definitions related to this policy include:

**Racial/Bias Profiling** - Reliance by an employee upon the race, ethnicity or national origin of a person as a factor in initiating action when the race, ethnicity or national origin of the person is not part of an identifying description or factor.

**402.3 POLICY**

The practice of racial/bias-based profiling will not be tolerated by this office.

(a) It is the responsibility of every member of this office to prevent, report and respond appropriately to clear discriminatory or biased practices.

(b) No retaliatory or punitive action may be taken against any deputy who discloses information concerning racial profiling.

(c) Every member of this office engaging in a non-consensual detention shall be prepared to articulate sufficient reasonable suspicion to justify the detention independent of the individual's membership in a protected class.

1. To the extent that written documentation would otherwise be completed (e.g., arrest report, Field Interview (FI) card), the involved deputy should include those facts giving rise to the deputy's reasonable suspicion or probable cause for the contact.

2. Nothing in this policy shall require any deputy to document a contact that would not otherwise require reporting.

3. While the practice of racial profiling is strictly prohibited, it is recognized that race or ethnicity may be legitimately considered by a deputy in combination with other legitimate factors to establish reasonable suspicion or probable cause (e.g., suspect description is limited to a specific race or group).

**402.4 TRAINING**

(a) All newly sworn peace officers hired by this office shall initially receive a copy of this policy, and regularly thereafter, as designated by the Training Coordinator.

(b) All sworn members of this office will attend regular training on the subject of racial profiling as designated by the Training Coordinator.

# Cochise County Sheriff's Office
Policy Manual
*Racial/Bias Based Profiling*

(c) Members of this office are encouraged to familiarize themselves with and consider racial and cultural differences among members of our community.

## 402.5 COMPLAINTS

The Cochise County Sheriff's Office will investigate all complaints of alleged racial/bias-based profiling against its members, just as any other complaint is investigated. On the commencement of an investigation regarding a complaint in which a video or audio recording was made, the Office may provide a copy of the recording to the deputy on written request.

## 402.5.1 CORRECTIVE ACTION

Employees found to be in violation of this policy are subject to discipline in accordance with this office's Disciplinary Policy and shall receive additional training and instruction as outlined by the Command Staff.