# Exhibit D

## **DECLARATION OF DANIEL RAISS**

Daniel Raiss declares as follows:

1. The facts set forth below are of my own personal knowledge and, if called as a witness, I could and would testify competently thereto.

2. I am currently employed as a Deputy Sheriff for the Yavapai County Sheriff's Office. I have worked for Yavapai County since 1996. From 1996 through 1999, I was employed as an Adult Probation Officer. In 1999, I became a Deputy Sheriff. Initially, I spent 18 months "on the road" enforcing traffic laws. I then spent approximately one year serving with my K-9 partner "Rocko," until his retirement from service. From 2002 through 2005, I worked as part of the Yavapai County Sheriff's Office Special Crimes Unit, which included traffic enforcement responsibilities and enforcement of drug and DUI laws. In 2005, I was again assigned to be "on the road" and enforce traffic laws. In 2008, I was promoted to Supervisor of a patrol squad consisting of six officers. In 2010, I was assigned to supervise Yavapai County Sheriff's Office's Detectives. Since June 2012, I have been assigned to the Training and Recruitment Section and oversee both sworn and civilian personnel.

3. In addition to my duties with the Yavapai County Sheriff's Office, I also assist in training new police officers at the Northern Arizona Regional Police Academy, which provides training to prospective and current police officers under the oversight of AzPOST.

4. The Northern Arizona Regional Police Academy offers a full certification course that consists of 585 hours of training over 18 weeks. This includes training about the constitutional standards of, among other things, reasonable suspicion, probable cause, and racial profiling. Upon completion of the training course, attendees are well versed and understand the limitations placed upon them by the United States Constitution and Arizona Revised Statutes.

5. All sworn officers in the Yavapai County Sheriff's Office, in addition to being certified, have participated in the S.B. 1070 training prepared and distributed by AzPOST. This training has prepared our agency, or more accurately, reinforced our prior training, to enforce Section 2(B) of S.B. 1070 within Constitutional limits.

6. I understand that Section 2(B) requires me, when I have already stopped, detained, or arrested someone based upon reasonable suspicion of a separate offense, to make a reasonable attempt to determine the immigration status of that individual if I develop reasonable suspicion that the person is not lawfully present. I further understand that Section 2(B) allows me to use my discretion to determine if it is, in fact, practicable for me to contact Federal authorities when making a lawful stop, detention or arrest.

7. I and the officers I work with, have a solid understanding of reasonable suspicion and probable cause. In our work, we do not stop someone unless we have reasonable suspicion that they have violated the law. It is more common in the traffic stop context, however, to pull someone over after we have developed probable cause that the person has violated the law.

8. Upon having reasonable suspicion or probable cause, and once the person has been stopped, officers are permitted by statute to ask the driver of the vehicle for identification and, as necessary, identification for any passengers.

9. In cases where the driver does not have his or her driver's license, the driver may provide his or her name, date of birth, and other verifiable information such as his or her social security number, to assist the officer in arriving at a proper identification. This information allows an officer to check the veracity of the information against various databases.

10. Also, the information provided by a person may serve as indicia of unlawful presence. For example, if a driver does not have identification, officers will ask a driver for his or her name and date of birth. After continuing the conversation, the officer may inquire a second time to check if the person is providing the same

information as in the first inquiry. If the person fails to do so, this is one factor in developing reasonable suspicion that a person is not who they say they are.

11. Assuming that a person does not disclose his or her status as unlawfully present, reasonable suspicion of unlawful presence may still develop through a series of routine questions that officers ask when trying to identify a person.

12. A non-exhaustive list of factors that could give rise to reasonable suspicion of unlawful presence when considered in the context of the totality of the circumstances of the interaction with the individual, include:
- The person hesitates or has trouble giving a name or date of birth;
- The person provides contradictory information about his or her identifying information later in the contact;
- The person cannot identify where he or she is going or where he or she came from;
- The person is traveling in the wrong direction from the location he or she is trying to get to;
- The person provides a destination that is not geographically connected;
- The person's body language suggests he or she is unusually nervous (for example, unusual sweating, shaking or avoiding eye contact);
- The person continually tries to change the topic of conversation away from his or her travel plans or identity;
- The person claims to not know basic identifying information such as a home address or telephone number or, alternatively, provides a telephone number with the wrong number of digits; or
- The person provides information or identification from another country.

13. Race is never a factor in developing reasonable suspicion of unlawful presence. Nor is race a factor in developing reasonable suspicion that any crime has been or is being committed, except for when a description of an alleged offender has been provided.

14. I am confident that the Yavapai County Sheriff's Office can apply Section 2(B) of S.B. 1070 in accordance with the United States Constitution because our office already has the discretion to contact Federal authorities when we have reasonable suspicion that someone we are in contact with is unlawfully present.

15. As further evidence of our agency's ability to enforce Section 2(B) of S.B. 1070 without violating the United States Constitution, during my 15 years at Yavapai County, there has not been a single sustained allegation of racial profiling or bias policing. Furthermore, in speaking with Sheriff Mascher, he is not aware of a single sustained allegation of racial profiling or bias policing in the thirty years he has been with the Yavapai County Sheriff's Office.

I declare under penalty of perjury that the foregoing is true and correct.

DATED August 8, 2012

Yavapai County, Arizona.

By _____
Daniel Raiss