# Exhibit E

## DECLARATION OF MARK SPENCER

Mark Spencer declares as follows:

1. The facts set forth below are of my own personal knowledge and, if called as a witness, I could and would testify competently thereto.

2. I was employed as a police officer by the Phoenix Police Department from December 1986 until January 2012.

3. During my twenty-five years of service with the Phoenix Police Department, I served in a uniformed capacity in a variety of units, including patrol, "walking beat" (public housing), a community action officer, and as part of a neighborhood enforcement team.

4. I have been AzPOST certified during my entire career.

5. During the last fourteen years of my career, I served as an Executive Board Member of the Phoenix Law Enforcement Association ("PLEA"). During the last four years of my career, I served as the President of PLEA. As PLEA's President, I represented approximately 2,200 rank and file police officers and detectives employed by the City of Phoenix. PLEA is the largest single police association in the state of Arizona.

6. In late 2007 and early 2008, while I was serving as PLEA's President, PLEA's membership directed PLEA's Board to take steps to modify Operation Order 1.4.3 to allow a police officer discretion to contact federal immigration officials. At the time PLEA's Board was given this direction, Operation Order 1.4.3 prevented an officer from contacting ICE unless a person had been arrested for a felony crime.

7. PLEA's membership wanted the discretion to contact federal immigration officials when they had reasonable suspicion that someone was unlawfully present. PLEA's membership did not want, under any circumstances, to engage in routine immigration enforcement.

8. The discretion sought by PLEA's membership was the same discretion that

a police officer has to contact and partner with federal law enforcement officials when an officer has reasonable suspicion that a person has violated a federal law. For example, police officers routinely contact and partner with the Federal Bureau of Investigation (FBI), the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), the Drug Enforcement Administration (DEA), the United Stated Postal Inspection Service, and the United States Secret Service.

9. During this time, PLEA made a formal request to Phoenix Police Department's Chief of Police, Jack Harris, to modify Operation Order 1.4.3. Jack Harris ignored PLEA's request. Also, Phoenix's Mayor, Phil Gordon, and Chief Jack Harris both vociferously opposed any change to Operation Order 1.4.3.

10. In addition to making a formal request of Chief Jack Harris, PLEA's Board met with the Phoenix Police Department's Hispanic Advisory Committee and discussed PLEA's proposed changes to Operation Order 1.4.3. The Hispanic Advisory Committee offered no opposition to PLEA's proposed changes to Operation Order 1.4.3.

11. PLEA and community leaders shared a similar concern that the crime of illegal immigration was negatively impacting the quality of life and the public safety in the City of Phoenix.

12. Ultimately, Operation Order 1.4.3 was changed in March 2008 to reflect the changes requested by PLEA, its membership, and the community. The change in Operation Order 1.4.3 gave police officers the discretionary authority to contact ICE if an officer contacted a person connected to a crime and had reasonable suspicion that the person was unlawfully present.

13. By October 2008, just seven months later, Phoenix Police Chief Jack Harris, through an employee notification system bulletin, notified all employees of the Phoenix Police Department – both civilian and sworn – that violent crimes and reports of stolen vehicles had fallen by more than 20% as a result in the change of Operation Order 1.4.3.

14. Given the success of the policy change to Operation Order 1.4.3, PLEA supported State legislation to provide other agencies with the discretion to contact ICE and to prevent the possibility of a reversal of the revised form of Operation Order 1.4.3 by a subsequent police administrator or political appointee.

15. As the single largest association of police officers, PLEA monitors prospective legislation that may impact its members' policing abilities and those of law enforcement officers generally.

16. Then State Senator Russell Pearce contacted PLEA for assistance in developing legislative language that would address the concerns PLEA raised in its efforts to have Operation Order 1.4.3 changed.

17. PLEA had direct input and offered specific language to facilitate the intent of preserving an officer's discretionary authority to contact ICE. Specifically, PLEA contributed to the drafting of Section 2 and Section 2(B) in particular. PLEA also strongly supported the inclusion of a statement that racial profiling would not be tolerated.

18. Specifically, PLEA provided language regarding the requirement of reasonable suspicion – a legal principal understood by law enforcement officers. Also, PLEA specifically asked for inclusion of the language "when practicable" to avoid a mandate to contact ICE, but rather, to facilitate the granting of discretion to do so.

19. PLEA communicated to the state legislature, to Governor Brewer's office, and to media outlets that it had effectively test driven Section 2(B) of SB 1070 by following Revised Operation Order 1.4.3 without a single complaint of racial profiling, biased policing, or civil rights infraction. Had any complaints been made, PLEA would have received notice because it represents all Phoenix Police Officers in allegations of misconduct against them.

20. I remain confident today that Phoenix Police Officers, and all law enforcement officers in Arizona, can enforce Section 2(B) consistent with the United

States Constitution because I watched Phoenix Police Officers do so in relation to revised Operation Order 1.4.3.

21. Also, because I was a sworn officer at the time, I participated in AzPOST's training relating to SB 1070. In fact, PLEA members participated in the development and presentation of the AzPOST training. I believe that the training adequately prepared me and my fellow police officers to enforce Section 2(B) consistent with the United States Constitution.

I declare under penalty of perjury that the foregoing is true and correct.

DATED 8-9-12

Maricopa County, Arizona.

By _____
Mark Spencer

15603134