IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Valle del Sol, et al.,<br><br>    Plaintiffs,<br><br>vs.<br><br>Michael B. Whiting, et al.,<br><br>    Defendants. | No. CV 10-1061-PHX-SRB<br><br>**ORDER** |

At issue is Plaintiffs' Motion for Preliminary Injunction ("4th PI Mot.") (Doc. 723). The Court also resolves Intervenor Defendants Janice K. Brewer and the State of Arizona's ("Defendants") Motion to Strike, Request for Judicial Notice, and Notice Re Evidentiary Hearing on Plaintiffs' Motion for Preliminary Injunction ("Defs.' Mot.") (Doc. 741) and Plaintiffs' Motion for Temporary Restraining Order in Event Injunction in *United States v. Arizona* Is To Be Dissolved ("Pls.' TRO Mot.") (Doc. 717).

**I.    BACKGROUND**

This Court's Order of October 8, 2010, which is incorporated fully herein, contains a full account of the facts of this case. (*See* Doc. 447, Oct. 8, 2010, Order at 1-4.) The pertinent details are briefly summarized here. Plaintiffs bring a variety of challenges to Arizona's Senate Bill 1070 ("S.B. 1070"), the "Support Our Law Enforcement and Safe

1  Neighborhoods Act," which was signed into law by Governor Brewer on April 23, 2010.[1] In
2  this Motion, Plaintiffs seek to enjoin two of S.B. 1070's provisions: Subsection 2(B) and the
3  portion of Section 5 creating Arizona Revised Statutes ("A.R.S.") § 13-2929. (*See* 4th PI
4  Mot. at 1.)

5        Subsection 2(B) requires law enforcement officers to make a reasonable attempt,
6  when practicable, to determine an individual's immigration status during any lawful stop,
7  detention, or arrest where reasonable suspicion exists that the person is unlawfully present
8  in the United States. A.R.S. § 11-1051(B). Subsection 2(B) also requires that all persons who
9  are arrested have their immigration status verified prior to release. *Id.* Section 5 of S.B. 1070
10 creates A.R.S. § 13-2929, which provides that it is unlawful for a person who is in violation
11 of a criminal offense to: (1) transport or move or attempt to transport or move an alien in
12 Arizona in furtherance of the alien's unlawful presence in the United States; (2) conceal,
13 harbor, or shield or attempt to conceal, harbor, or shield an alien from detection in Arizona;
14 and (3) encourage or induce an alien to come to or live in Arizona. *Id.* § 13-2929(A)(1)-(3).
15 In order to violate A.R.S. § 13-2929(A), a person must know or recklessly disregard the fact
16 that the alien is unlawfully present in the United States. *Id.* Violation of A.R.S. § 13-2929
17 is a class 1 misdemeanor. *Id.* § 13-2929(F).

18       S.B. 1070 had an effective date of July 29, 2010; on July 28, 2010, the Court
19 preliminarily enjoined certain provisions of the law from taking effect in the related case
20 *United States v. Arizona*, CV 10-1413-PHX-SRB. The Court concluded that Subsection 2(B)
21 was preempted by federal immigration law and preliminarily enjoined it from taking effect.
22 *United States v. Arizona*, 703 F. Supp. 2d 980, 993-98, 1008 (D. Ariz. 2010), *aff'd*, 641 F.3d
23 339 (9th Cir. 2011), *aff'd in part, rev'd in part*, 132 S. Ct. 2492 (2012). The Court rejected
24 the United States' two challenges to A.R.S. § 13-2929, which were that it was an improper
25 regulation of immigration and that it violated the dormant Commerce Clause. *Id.* at 1002-04.

---

[1] In this Order, the Court refers to Senate Bill 1070 and House Bill 2162 collectively as "S.B. 1070," describing the April 23, 2010, enactment as modified by the April 30, 2010, amendments.

1  No preliminary injunction issued as to A.R.S. § 13-2929. The Ninth Circuit Court of Appeals
2  upheld this Court's conclusions as to Subsection 2(B). *United States v. Arizona*, 641 F.3d at
3  346-54. Arizona appealed to the United States Supreme Court, and on June 25, 2012, the
4  Supreme Court reversed with respect to Subsection 2(B), ruling that there is "a basic
5  uncertainty about what the law means and how it will be enforced," so "it would be
6  inappropriate to assume [Subsection] 2(B) will be construed in a way that creates a conflict
7  with federal law." *See Arizona v. United States ("Arizona")*, 132 S. Ct. at 2507-10. On
8  August 8, 2012, the Ninth Circuit Court of Appeals issued its mandate, returning the case to
9  this Court for "further proceedings consistent with the opinion and judgment of the Supreme
10 Court." *See United States v. Arizona*, No. 10-16645, 2012 WL 3205612, at *1 (9th Cir. Aug.
11 8, 2012).

12     While the United States only challenges S.B. 1070 on the grounds that it is preempted
13 by federal law, Plaintiffs in this case bring a variety of other claims. Pertinent to this Motion,
14 Plaintiffs argue that, in addition to being preempted, Subsection 2(B) also violates the Fourth
15 Amendment and the Equal Protection Clause. (4th PI Mot. at 1-2.) Plaintiffs also make
16 different arguments with respect to A.R.S. § 13-2929. Where the United States only argued
17 that the provision was an improper regulation of immigration and violated the dormant
18 Commerce Clause, Plaintiffs here assert that it is field and conflict preempted by federal
19 immigration law. (*Id.* at 2-3.) Plaintiffs now move for a preliminary injunction as to
20 Subsection 2(B) and A.R.S. § 13-2929. (*Id.* at 1.) Defendants oppose Plaintiffs' Motion.
21 (Doc. 731, Defs.' Resp. to 4th PI Mot. ("Resp.") at 1.)

22 **II.     LEGAL STANDARDS AND ANALYSIS**

23     **A.     Preliminary Injunction Standard**

24     Plaintiffs seek to preliminarily enjoin the enforcement of Subsection 2(B) of S.B.
25 1070 and A.R.S. § 13-2929, as enacted by Section 5 of S.B. 1070. (4th PI Mot. at 1.) "A
26 plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the
27 merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that
28 the balance of equities tips in his favor, and that an injunction is in the public interest."

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

### B. Likelihood of Success on the Merits

#### 1. Subsection 2(B)

Plaintiffs seek a preliminary injunction as to Subsection 2(B) on the grounds that it is preempted by federal law and violates the Fourth Amendment and the Equal Protection Clause. (*See* 4th PI Mot. at 1-2.) Intervenor Defendants argue that the Supreme Court's opinion in *Arizona*, 132 S. Ct. at 2507-10, forecloses any further preenforcement challenges to Subsection 2(B). (Resp. at 3; *see also* Hr'g Tr. 23:14-24:5, Aug. 21, 2012 ("Hr'g Tr.").)

In *Arizona*, the Supreme Court concluded that Subsection 2(B) was not preempted on its face. 132 S. Ct. at 2510. The Court held,

> The Federal Government has brought suit against a sovereign State to challenge the provision even before the law has gone into effect. There is a basic uncertainty about what the law means and how it will be enforced. At this stage, without the benefit of a definitive interpretation from the state courts, it would be inappropriate to assume [Subsection] 2(B) will be construed in a way that creates a conflict with federal law.

*Id.* The Court further stated that "[t]his opinion does not foreclose other preemption and constitutional challenges to the law *as interpreted and applied after it goes into effect*." *Id.* (emphasis added). Plaintiffs argue that the Supreme Court did not have before it the record that exists in this case, demonstrating that Subsection 2(B) "will be implemented in precisely the manner that the Supreme Court deemed unconstitutional." (4th PI Mot. at 1.)

While the Supreme Court did state that "it is not clear at this stage and on this record that the verification process would result in a prolonged detention," the Court went on to conclude that it was improper to enjoin Subsection 2(B) "before the state courts had an opportunity to construe it and without some showing that enforcement of the provision in fact conflicts with federal immigration law and its objectives." *Arizona*, 132 S. Ct. at 2509-10. In a pair of cases challenging similar laws enacted in Georgia and Alabama, the Eleventh Circuit Court of Appeals concluded that the Supreme Court's holding in *Arizona* barred preenforcement facial challenges to the laws on preemption and other grounds. *See Ga. Latino Alliance for Human Rights ("GLAHR") v. Governor of Ga.*, No. 11-13044, 2012 WL

- 4 -

3553612, at *12-13 (11th Cir. Aug. 20, 2012); *United States v. Alabama*, Nos. 11-14532, 11-14674, 2012 WL 3553503, at *8-9 (11th Cir. Aug. 20, 2012).

This Court will not ignore the clear direction in the *Arizona* opinion that Subsection 2(B) cannot be challenged further on its face before the law takes effect. As the Supreme Court stated, Plaintiffs and the United States may be able to challenge the provision on other preemption and constitutional grounds "as interpreted and applied after it goes into effect." *See Arizona*, 132 S. Ct. at 2510. Plaintiffs have not shown that they are likely to succeed on their facial challenges to Subsection 2(B) because of the conclusions of the Supreme Court in *Arizona*.[2]

Plaintiffs also request that the Court certify a question to the Arizona Supreme Court as to whether Subsection 2(B) authorizes additional detention beyond the point a person would otherwise have been released, in order to determine that person's immigration status. (4th PI Mot. at 10 & n.2.) The Arizona Supreme Court has jurisdiction to answer questions certified to it by a federal court if the question "may be determinative of the cause then pending in the certifying court." A.R.S. § 12-1861; *see also In re Price Waterhouse Ltd.*, 46 P.3d 408, 409 (Ariz. 2002) (stating that § 12-1861 is jurisdictional).

The Court declines to follow the unusual procedure of certifying a question to the state supreme court at this juncture. In the Court's view, such action should be taken sparingly and only where resolution of a particular question of state law is necessary for the progression of a federal case. *See Stollenwerk v. Tri-West Health Care Alliance*, 254 F. App'x 664, 668-69 (9th Cir. 2007) (declining to certify a question to the Arizona Supreme Court where the question was not determinative of the action at bar). At this point, such a question has not presented itself, either in the briefing or through the Court's own analysis and consideration of this issue. As stated at the hearing on Plaintiffs' Motion, Plaintiffs' proposed question

---

[2] As a result of this conclusion, Defendants' Motion is rendered moot. The court does not rely on any of the evidence Defendants seek to strike, nor is it necessary to take judicial notice of the documents Defendants submit or to conduct an evidentiary hearing. (*See* Defs.' Mot. at 1.) Defendants' Motion is denied as moot.

- 5 -

1  "would not be productive of any answer that [the Court does not] already know." (Hr'g Tr.
2  38:21-22.) Given the Supreme Court's ruling, the Arizona Supreme Court would be faced
3  with the same issue that bars this Court's consideration of Plaintiffs' facial challenges to
4  Subsection 2(B). Without a set of as-applied facts, the Supreme Court has held that it would
5  be speculative to decide as a matter of law that Subsection 2(B) will be enforced in an
6  unconstitutional manner. Therefore, the Court declines to certify a question to the Arizona
7  Supreme Court.

**2.    A.R.S. § 13-2929**

9  Plaintiffs also seek to enjoin A.R.S. § 13-2929, created by a portion of Section 5 of
10 S.B. 1070. (4th PI Mot. at 36-43.) A.R.S. § 13-2929 makes it illegal for a person who is in
11 violation of a criminal offense to: (1) transport or move or attempt to transport or move an
12 alien in Arizona in furtherance of the alien's unlawful presence in the United States; (2)
13 conceal, harbor, or shield or attempt to conceal, harbor, or shield an alien from detection in
14 Arizona; and (3) encourage or induce an alien to come to or live in Arizona. A.R.S. § 13-
15 2929(A)(1)-(3). In order to violate A.R.S. § 13-2929(A), a person must also know or
16 recklessly disregard the fact that the alien is unlawfully present in the United States. *Id.*
17 Plaintiffs argue that A.R.S. § 13-2929 should be enjoined because it is both field and conflict
18 preempted by federal immigration law. (4th PI Mot. at 37.)

19 The Supremacy Clause of the United States Constitution makes federal law "the
20 supreme law of the land." U.S. Const. art. VI, cl. 2. The Supreme Court has consistently
21 ruled that the federal government has broad and exclusive authority to regulate immigration,
22 supported by both enumerated and implied constitutional powers. While holding that the
23 "[p]ower to regulate immigration is unquestionably exclusively a federal power," the
24 Supreme Court concluded that not every state enactment "which in any way deals with aliens
25 is a regulation of immigration and thus per se preempted by this constitutional power,
26 whether latent or exercised." *De Canas v. Bica*, 424 U.S. 351, 354-355 (1976).

27 Federal preemption can be either express or implied. *Gade v. Nat'l Solid Wastes*
28 *Mgmt. Ass'n*, 505 U.S. 88, 98 (1992). There are two types of implied preemption: field

- 6 -

preemption and conflict preemption. *Id.* Field preemption occurs "[w]hen Congress intends federal law to 'occupy the field.'" *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000). Conflict preemption describes a situation in which "it is impossible for a private party to comply with both state and federal law" or where the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 372-73 (quotations and citations omitted). An actual, as opposed to hypothetical or potential, conflict must exist for conflict preemption to apply. *Chicanos Por La Causa, Inc. v. Napolitano*, 558 F.3d 856, 863 (9th Cir. 2009), *aff'd sub nom. Chamber of Commerce of U.S. v. Whiting*, 131 S. Ct. 1968 (2011).

The Court previously rejected two arguments in favor of invalidating A.R.S. § 13-2929 made by the United States in *United States v. Arizona*, namely that the provision was an improper regulation of immigration and that it violated the dormant Commerce Clause. 703 F. Supp. 2d at 1002-04. The Court also rejected the United States' argument, made in a footnote, that A.R.S. § 13-2929 conflicts with federal immigration law because it does not contain an exception for certain religious groups for contact with volunteer ministers and missionaries. *Id.* at 1002 n.18. Plaintiffs here advance a different set of theories. (*See* 4th PI Mot. at 37-43.) Plaintiffs argue that A.R.S. § 13-2929 "conflicts with the purposes and objectives of the relevant federal law, criminalizes more conduct than its federal counterpart, and imposes additional penalties beyond those approved by the federal scheme." (*Id.* at 37-38.)

In *GLAHR* and *Alabama*, the Eleventh Circuit Court of Appeals examined two analogous provisions and concluded that they were preempted. *See GLAHR*, 2012 WL 3553612, at *8-11; *Alabama*, 2012 WL 3553503, at *9-12. The *GLAHR* court held that the Immigration and Nationality Act ("INA") "provides a comprehensive framework to penalize the transportation, concealment, and inducement of unlawfully present aliens." 2012 WL 3553612, at *8. Indeed, pursuant to 8 U.S.C. § 1324, it is a federal crime to transport or move an unlawfully present alien within the United States; to conceal, harbor, or shield an unlawfully present alien from detection; or to encourage or induce a person to "come to,

1 enter, or reside in the United States" without authorization. *See* 8 U.S.C. § 1324(a)(1)(A)(ii)-
2 (iv). It is also unlawful to conspire or aid in any of these acts. *Id.* § 1324(a)(1)(A)(v). While
3 state officials are authorized to make arrests for these violations of federal law, the federal
4 government retains exclusive jurisdiction to prosecute them, subject to evidentiary rules set
5 forth in the statute. *Id.* §§ 1324(c)-(d), 1329.

6 Citing *De Canas*, the Eleventh Circuit Court of Appeals concluded, "In the absence
7 of a savings clause permitting state regulation in the field, the inference from these
8 enactments is that the role of the states is limited to arrest for violations of federal law."
9 *GLAHR*, 2012 WL 3553612, at *8. The court in *GLAHR* situated § 1324 within a larger
10 context of federal provisions, finding the overall scheme to be "comprehensive" and
11 illustrative of "an overwhelmingly dominant federal interest in the field." *See id.* Analogizing
12 to the Supreme Court's analysis of S.B. 1070's Section 3, the Eleventh Circuit Court of
13 Appeals concluded that "[t]he INA comprehensively addresses criminal penalties for [the
14 actions described in § 1324] undertaken within the borders of the United States, and a state's
15 attempt to intrude into this area is prohibited because Congress has adopted a calibrated
16 framework within the INA to address this issue." *Id.* at *9. Accordingly, the *GLAHR* court
17 found that Georgia's harboring provision was field preempted. *Id.* The court went on to
18 determine that Georgia's law "presents an obstacle to the execution of the federal statutory
19 scheme and challenges federal supremacy in the realm of immigration," thus concluding that
20 it is also conflict preempted. *Id.* The *GLAHR* court found that federal enforcement priorities
21 conflicted with Georgia state officials' priorities in such a way that the state law was
22 impermissibly in conflict with federal law. *Id.* at *9-10. Following its own reasoning in
23 *GLAHR*, the Eleventh Circuit Court of Appeals came to the same conclusion regarding a very
24 similar provision of Alabama law. *See Alabama*, 2012 WL 3553503, at *9-12.

25 The Court follows the reasoning of the Eleventh Circuit Court of Appeals with respect
26 to analogous provisions of Georgia and Alabama law and concludes that A.R.S. § 13-2929
27 is field and conflict preempted. Federal immigration law creates a comprehensive system to
28 regulate the transportation, concealment, movement, or harboring of unlawfully present

- 8 -

1 people in the United States. *See* 8 U.S.C. §§ 1324, 1329; *GLAHR*, 2012 WL 3553612, at *8. In crafting federal regulation of these activities, Congress permitted state law enforcement officials to arrest for violations of federal law, but did not allow for state regulation in the field. *See* 8 U.S.C. § 1324(c*)*; *De Canas*, 424 U.S. at 363. Federal law creates a detailed framework governing the actions of people who come to the United States without authorization and the people who help them. *See GLAHR*, 2012 WL 3553612, at *8 (citing 8 U.S.C. §§ 1323, 1325, 1327-28). "The federal government has clearly expressed more than a peripheral concern with the entry, movement, and residence of aliens within the United States," leaving no room for state legislation in the field. *See id.* (quotation omitted). Therefore, the Court finds that A.R.S. § 13-2929 is field preempted.

A.R.S. § 13-2929 also "presents an obstacle to the execution of the federal statutory scheme and challenges federal supremacy in the realm of immigration." *See id.* at *9. By vesting enforcement discretion with state officials rather than federal officials, A.R.S. § 13-2929 conflicts with federal law and is preempted. *See Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 427 (2003) ("California seeks to use an iron fist where the President has consistently chosen kid gloves.") . Further, "[p]ermitting the State to impose its own penalties for the federal offenses here would conflict with the careful framework Congress adopted." *Arizona*, 132 S. Ct. at 2502. It is immaterial to this analysis that S.B. 1070 might have the same goal as federal immigration law or incorporate some of the same substantive standards: "States may not enter, in any respect, an area the Federal Government has reserved for itself." *See id*. For these reasons, A.R.S. § 13-2929 is also conflict preempted. Plaintiffs have shown that they are likely to succeed on the merits of their claim with respect to this provision.

### C. Irreparable Harm

The Supreme Court has repeatedly recognized the "basic doctrine of equity jurisprudence that courts of equity should not act . . . when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Younger v. Harris*, 401 U.S. 37, 43-44 (1971). Thus Plaintiffs have the burden to show that, absent a preliminary injunction, there is a likelihood–not just a possibility–that it will suffer

1 irreparable harm. *Winter*, 555 U.S. at 22.

2 The Ninth Circuit Court of Appeals has stated "'that an alleged constitutional infringement will often alone constitute irreparable harm.'" *Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997) (quoting *Assoc. Gen. Contractors of Cal., Inc. v. Coal. for Econ. Equal.*, 950 F.2d 1401, 1412 (9th Cir. 1991)). Indeed, if an individual or entity faces the imminent threat of enforcement of a preempted state law and the resulting injury may not be remedied by monetary damages, the individual or entity is likely to suffer irreparable harm. *See Morales v. Trans World Airlines, Inc*., 504 U.S. 374, 381 (1992) (stating that a federal court may properly enjoin "state officers 'who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected [by] an unconstitutional act, violating the Federal Constitution'" (quoting *Ex parte Young*, 209 U.S. 123, 156 (1908)); *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 366-67 (1989) (suggesting that irreparable injury is an inherent result of the enforcement of a state law that is preempted on its face); *United States v. Arizona*, 641 F.3d at 366 (concluding that the Court did not abuse its discretion in determining that irreparable harm would ensue if Arizona were to implement preempted provisions of S.B. 1070). The Court finds that Plaintiffs are likely to suffer irreparable harm in the absence of an injunction running to A.R.S. § 13-2929 because it is preempted by federal law.

### D. Balance of the Equities and Public Interest

Plaintiffs have the burden to show that the balance of equities tips in their favor and that a preliminary injunction is in the public interest. *Winter*, 555 U.S. at 20. "A preliminary injunction is an extraordinary remedy never awarded as of right." *Id*. at 24. "In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief,'" paying particular attention to the public consequences. *Id.* (quoting *Amoco Prod. Co. v. Vill. of Gambell, Alaska*, 480 U.S. 531, 542 (1987)).

The Ninth Circuit Court of Appeals has "found that 'it is *clear that it would not be equitable or in the public's interest to allow the state . . .* to violate the requirements of

federal law, especially when there are no adequate remedies available . . . . In such circumstances, the interest of preserving the Supremacy Clause is paramount.'" *United States v. Arizona*, 641 F.3d at 366 (quoting *Cal. Pharmacists Ass'n v. Maxwell-Jolly*, 563 F.3d 847, 852-53 (9th Cir. 2009)). Likewise, in this instance, the Court finds that it would not be equitable or in the public interest to permit the enforcement of a preempted provision of state law, such as A.R.S. § 13-2929. Accordingly, Plaintiffs have satisfied this factor. (*See* 4th PI Mot. at 47-49.)

## III. CONCLUSION

Plaintiffs have not shown that they are likely to succeed on their facial challenges to Subsection 2(B) as a result of the Supreme Court's opinion in the related case. Plaintiffs have shown that they are likely to succeed as to the merits of their claim that A.R.S. § 13-2929 is preempted. Plaintiffs have further shown that they are likely to suffer irreparable harm in the absence of an injunction and that the balance of the equities and the public interest favor an injunction as to A.R.S. § 13-2929.[3]

**IT IS THEREFORE ORDERED** granting in part and denying in part Plaintiffs' Motion for Preliminary Injunction (Doc. 723).

**IT IS FURTHER ORDERED** preliminarily enjoining the enforcement of A.R.S. § 13-2929.

**IT IS FURTHER ORDERED** denying as moot Intervenor Defendants Janice K. Brewer and the State of Arizona's Motion to Strike, Request for Judicial Notice, and Notice Re Evidentiary Hearing on Plaintiffs' Motion for Preliminary Injunction (Doc. 741).

///

///

///

---

[3] Plaintiffs moved for a temporary restraining order in the event the Court did not rule on their Motion for a Preliminary Injunction before the injunction in the federal government's case was dissolved. (Pls.' TRO Mot. at 1-2.) The Court's conclusions in this Order render Plaintiffs' TRO Motion moot.

**IT IS FURTHER ORDERED** denying as moot Plaintiffs' Motion for Temporary Restraining Order in Event Injunction in *United States v. Arizona* Is To Be Dissolved (Doc. 717).

DATED this 5th day of September, 2012.

_____
Susan R. Bolton
United States District Judge